## B. E. SHUBERT *v.* THE STATE.

1. CRIMINAL PROCEDURE. *Special venire. Omission of name in list furnished accused.*

   A special venire will not be quashed because in the list given to the prisoner the name of one of the persons drawn is inadvertently omitted.

2. OBJECT OF SPECIAL VENIRE. *Rights of defendant.*

   The defendant has no vested right to any particular person on a special venire. If he secures an impartial jury in his trial, the purpose of the statute has been accomplished, and there can be no ground for complaint.

3. INSTRUCTION. *Reasonable doubt. Doubt upon a doubt.*

   It is error to instruct the jury that if there is any fact or facts in evidence, which if true, would cause the jury reasonably to doubt the guilt of accused, and if the jury are uncertain whether such fact or facts be true, they should acquit. Such instruction invokes a doubt upon a doubt.

4. SAME. *Evidence tending to show innocence. Effect of doubt.*

   An instruction which tells the jury that it must acquit if the testimony for the defense tends to show defendant innocent, and the jury is uncertain whether such testimony is true or not, is erroneous, and it is proper for the court to refuse it.

5. INSTRUCTION DEFINING OFFENSE. *Failure of defendant to apply for same.*

   A defendant, who upon a trial for murder is convicted of manslaughter, cannot complain of the failure of the court by instruction to define manslaughter to the jury, if he did not ask for such definition.

FROM the circuit court of Leflore county.

HON. C. H. CAMPBELL, Judge.

Appellant was indicted for the murder of James Smith, and was convicted of manslaughter. A special venire of thirty jurors was drawn and summoned, but the list of the venire served upon the prisoner with the copy of the indictment contained only twenty-nine names. On the trial the court proceeded to empanel a jury from the venire so drawn, and had obtained four jurors, when it appeared that the name of one person appearing on the venire was not upon the list furnished to the accused. Thereupon the defendant moved to quash the special venire because a true copy thereof

had not been served upon him.  This motion the court overruled, but set the juror aside and from the remainder of the venire completed the panel, the defendant having made use of but seven peremptory challenges.

The homicide occurred in the back room of a store, and in the presence of but two eye-witnesses other than the accused.  The two witnesses were examined for the state and substantially agree in their testimony, which was to the following effect : Witnesses were seated in company with deceased in the back room of the store, when the appellant came in and began a casual conversation about crops and the scarcity of laborers.  The appellant made some remarks reflecting upon the " Farmers' Alliance," to which the deceased belonged, and this drew forth a contradiction from the latter, and a verbal altercation arose between them in which " the lie " passed, and deceased struck the accused, knocking him down.  Upon a remonstrance from one of the witnesses, he desisted and sat down.  The appellant arose and put his hand into his pocket as if to draw a weapon, whereupon the deceased arose and seized a shovel and told him, " If you draw a pistol I will split your head open."  Shubert replied, " I haven't any pistol, and wasn't thinking of drawing any on you."  Smith then resumed his seat, and the witnesses supposed the difficulty was ended, but appellant endeavored to talk further about the matter, and Smith told him, " You are drinking, and I don't want to be bothered by you," and ordered him to leave the house.  Appellant then drew a pistol from his pocket, and, calling to witnesses to stand back, fired at deceased, the ball taking effect in the forehead and producing death.  A second shot from the accused was fired, but owing to the seizure by a witness of his arm, the ball went upward into the ceiling.

The defendant testified for himself, and swore that he shot Smith while the latter was advancing upon him with a chair drawn to strike him.  It was proven that the defendant was at the time somewhat under the influence of liquor.

The court gave twelve instructions asked for by the state, among which was the following :

10. " The court instructs the jury, as a matter of law, that the doubt which the juror is allowed to retain on his own mind, and under the influence of which he should frame a verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of any juror in view of the consequences of his verdict, is not a reasonable one, and a juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures as to possible state of facts, differing from that established by the evidence. You are not at liberty to disbelieve as jurors if you believe as men. Your oaths impose on you no obligation to doubt, where no doubt would exist if no oath had been administered."

The court refused the following instructions asked by the defendant :

7. " That if the jury, from the evidence in this case, believe that Smith, immediately preceding the shooting, provoked and brought on a difficulty with Shubert, and made such hostile demonstration by acts and conduct as reasonably led Shubert to believe, situated as he then was, and that he did so believe, that Smith intended at once to assault him with a chair, which in his hands was means and force likely, when used by him, to produce great bodily injury upon Shubert, then he was not bound to wait until such assault was actually committed, but he had a right to anticipate such assault, and use such means as was apparently necessary to prevent the infliction upon himself of great personal injury if such assault was permitted to proceed ; and if, from the evidence, the jury either believe that the shooting occurred under such circumstances as detailed in this instruction, or entertain a reasonable doubt that such was the character of the shooting, then they will acquit; or if, from the evidence, there is a probability that the shooting occurred under the circumstances set forth in this instruction, then there is reasonable doubt of guilt, and the law acquits the defendant.

9. " That a reasonable doubt is such a doubt as an intelligent reason can be given for in the light of all the law and testimony in a given case, and if there be a single material fact relied on by the state to secure a conviction, about the truth of which the minds

of the jury halt and hesitate, the jury should say, not guilty. Or if there be a fact or facts proven in the testimony of the witnesses either for the state or the defense, which, taken in a reasonable, natural, and honest way, would if true cause the jury to reasonably doubt the guilt of the defendant, and the jury are uncertain whether such facts are true or not, they should say, not guilty; or if the testimony of the accused tends to show him innocent of the charge, and the jury are uncertain whether such testimony is true or not, the jury ought to find the defendant not guilty."

*Coleman & Barry, Theo. P. Gibbs,* and *H. Cassidy, Sr.,* for appellant.

1. The failure to furnish defendant a true copy of the venire was fatal to it. The plain provision of the law cannot be evaded upon the ground of expediency. If so, where will such doctrine lead? Departure in a slight degree warrants, or may set a precedent for, a greater departure.

2. The tenth instruction relieved the jury from the sanctity of their oaths, and is more than calculated to becloud their minds as to what is reasonable doubt.

3. The seventh instruction for the defendant was improperly refused. It announced a well-established doctrine that needs no citations to support it. We invite a comparison of the ninth instruction for the defendant and the tenth for the state. Each attempts a definition of reasonable doubt, and the refusal of the one and granting of the other was plainly error.

*S. R. Coleman,* of counsel for appellant, submitted an oral argument.

*T. J. Wharton,* acting attorney-general, for the state.

1. The defendant cannot complain of the accidental omission of one name from the copy of the venire served upon him. In *Boles' Case,* 24 Miss. 450, an objection to the venire because six of those drawn and summoned failed to appear was overruled. The defendant is entitled to the copy to aid him in selecting an impartial jury. In this case the juror whose name was omitted upon defendant's list was excused by the court, and accused did not exhaust his challenges. An impartial jury was obtained.

66 MISS.—29.

2. Of the very numerous, diffuse and, I may say, unnecessary, instructions which, despite the admonitions of this court, the prosecution asked and obtained, I do not find one that should cause a reversal.

3. The tenth instruction for the state in its effort to define that indefinable phrase, a reasonable doubt, is somewhat metaphysical, *if not incomprehensible, and could have had no influence upon a jury.*

4. The ten instructions given for the defendant cover every possible defense, and were admirably and adroitly drawn to give defendant the full advantage of every fact in his favor, and the two refused were rightly refused.

CAMPBELL, J., delivered the opinion of the court.

The motion to quash the special venire because the name of one of the thirty drawn and summoned was omitted from the copy furnished the prisoner was properly overruled. The omission was a mere inadvertence, and no harm was done the prisoner by the action of the court in the matter. The person whose name was left off the copy given the prisoner was set aside by the court, and a jury was selected from the other twenty-nine men of the special venire, and without an exhaustion of the peremptory challenges allowed the prisoner by law.

It is a mistake to suppose that the prisoner has a vested right to a particular person of the special venire. The statutes providing for a special venire and giving the prisoner a copy of the indictment and list of the special venire summoned are designed to secure an impartial jury to try him, and where that is accomplished no ground for complaint exists.

The instructions given at the instance of the state are free from objection. All that can be urged against the 10th is that it is another instance of the vain attempt to do the impossible, *i. e.,* to define that indefinable thing, reasonable doubt, all efforts at which seem to us calculated only to confuse and mislead.

The 7th instruction asked by the prisoner was rightly refused, because it coupled the preceding difficulty between the parties with

the killing in a manner unwarranted by the evidence, and because all that is proper in that instruction is contained in another given for the accused.

The 9th instruction asked by the accused was properly refused because it invokes a doubt upon a doubt as entitling to an acquittal, and likewise claims it as a right, if the testimony of defendant " tends to show him innocent of the charge and the jury are uncertain whether such testimony is true or not." Surely, this is not the law.

The defendant cannot complain of the failure of the court to define manslaughter, as he did not seek to obtain any definition of it.

*Affirmed.*