JAMES M. MURPHY *v.* STATE OF MISSISSIPPI.

[42 South. Rep., 877.]

1. CRIMINAL LAW. *Homicide. Willful killing. Instruction.*

An instruction in a murder case announcing to the jury that every willful killing of a human being is either murder or manslaughter is erroneous, since it takes away the right of self-defense.

2. SAME. *Reasonable doubt. Presumption of innocence.*

An instruction in a murder case which ignores the presumption of innocence until guilt is established beyond every reasonable doubt, and requires the jury to have no reasonable doubt of guilt before they can acquit, is erroneous.

3. SAME. *Conflicting instructions.*

An instruction for the state announcing the direct contrary of the law to be the law is not cured by one for defendant merely stating the law correctly.

FROM the circuit court of Yazoo county.

HON. DAVID M. MILLER, Judge.

Murphy, the appellant, was indicted and tried for the murder of Joseph Hagan, was convicted of manslaughter and sen-

tenced to the penitentiary for a term of years, and appealed to the supreme court.

The killing occurred in Yazoo City at the close of a heated municipal election. The testimony was sharp and conflicting. The state's theory of the facts was that appellant and others were standing in front of the courthouse, where ballots were being counted, when Hagan, partially intoxicated, passed by, shouting for one of the candidates, and, as he passed appellant, without provocation, seized him and threw him to the ground, and as he arose shot him. The defendant claimed that Hagan, as he passed, shouted offensively in appellant's face, and thereupon appellant threw him to the ground, falling with him; as they arose they were separated by other persons, but Hagan, escaping from those who sought to restrain him, drew a large knife, and rushed at appellant, causing him to retreat, and cry out "Stand back!" Hagan, however, continued to advance upon appellant with an open knife, placing appellant in peril of his life, and that he, being in such peril, drew his revolver and shot Hagan in self-defense.

*Barnett & Perrin,* and *R. N. Miller,* for appellant.

The granting of the third instruction asked by the state was fatal error. It in effect charged that every willful killing of a human being is either murder or manslaughter. No account whatever is taken of malice aforethought. Under the instruction a jury would be compelled to bring in a verdict of guilty of murder or of manslaughter in every case where an accused person admitted killing another, even though it was apparent that the killing was in self-defense.

The tenth instruction granted to the state was also erroneous, in that it eliminated all consideration of the fact that the defendant must be held innocent until proof of guilt was shown beyond any reasonable doubt.

The fact that other instructions to the jury stated correct

propositions of law as to murder and manslaughter, could not cure the errors in the above-mentioned instructions for the state. *Beasley* v. *State,* 64 Miss., 518 (s.c., 8 South. Rep., 234).

*R. V. Fletcher,* assistant attorney-general, and *J. F. Barbour,* for appellee.

If it be that the third and tenth instructions granted to the state were erroneous, the errors were cured by the many other instructions granted to the appellant, which stated the law so fully and liberally in favor of the appellant that the jury certainly could not have been misled as to the law of the case. *Harris* v. *State,* 47 Miss., 318.

WHITFIELD, C. J., delivered the opinion of the court.

The third instruction given for the state is in the following words:

"The court instructs the jury that every willful killing of a human being is either murder or manslaughter—murder, if done deliberately; manslaughter, if done without any deliberation whatever. And the deliberation necessary to constitute murder need only to exist for an instant before the fatal shot is fired."

This is so palpably erroneous as to need no discussion. Every killing in self-defense is deliberately and intentionally done.

The tenth instruction for the state is in the following words:

"The court instructs the jury that a reasonable doubt as to whether Hagan had a knife at or near the time of the killing is not such a doubt as would entitle the defendant to an acquittal; but, before he would be entitled to an acquittal by the verdict of the jury, they should have a reasonable doubt, from the evidence, or want of evidence, whether Hagan made such demonstration as would have caused a reasonably prudent man,

situated as Murphy was, to have apprehended danger to his life or person at the hands of Hagan."

This instruction manifestly meant that the reasonable doubt which the jury must entertain in order to acquit was a reasonable doubt as to whether Hagan made such demonstration with the knife as would have caused a reasonably prudent man, situated as Murphy was, to apprehend death or great bodily harm.    It is clearly open to the objection that it reversed the rule of law which presumes the defendant innocent until his guilt is established beyond all reasonable doubt, and in effect instructs the jury that they must have no reasonable doubt of his guilt before they can acquit.    The old paths, as so often said, are the safe paths.    Defendant was entitled to acquittal, so far as this feature of the law is concerned, on this charge, unless they were satisfied beyond a reasonable doubt that Hagan made no such demonstration.    The charge should be reframed to express the law.    The presumption which the law establishes is the presumption of innocence, which the state must overcome by the proof of guilt beyond all reasonable doubt, and not a presumption of guilt which the defendant must overcome.    There is no such thing as a presumption of guilt, and the charge is open to that criticism.

The evidence in the case is strongly conflicting, far too much so to warrant us in saying on so grave an issue that no other result could reasonably have been reached, if the error indicated had not been committed.    The ingenious argument by the learned assistant attorney-general that these erroneous instructions are cured, is not, we think, on this record tenable. It is not a case of defective or imperfect instructions, merely, for the state, the imperfections and defects being remedied and cured by the court's instructions for the defense, instructions supplementing the mere defects in the charges for the state; but it is rather a plain case of directly conflicting instructions.    Where an instruction for the state is, in some

minor. particular,. defective merely, and the instructions for the defense so supplement the instruction for the state as that, taken together, they constitute one harmonious statement of the law on the point, we have a case where the imperfections and defects in the state's instruction may be cured; but where the instruction for the state announces in positive terms a fundamental proposition in a wholly erroneous way, stating the direct reverse of the law, and the instructions for the defense simply state the law, on the point involved, in positive terms, as it ought to be, there is a case of a clear conflict—a case in which the court has given the jury two standards, and a case, consequently, in which the court has left the jury utterly at sea as to what the law, on the point involved, really is. If we might make use of a mathematical illustration, by way of putting our thought in concrete form, we would say this: That this third charge for the state, taken with the charges for the defense, on the point involved, is just as if the court had charged the jury for the state that two and two make five, and for the defense that two and two make four—a case of utterly irreconcilable conflict.

We notice no other assignments of error, trusting that a more careful procedure will mark the next trial.

*The judgment is reversed, and the cause remanded.*