## DALTON v. STATE.

(In Banc. Nov. 2, 1925).

[105 So. 784. No. 25211.]

1. CRIMINAL LAW. *Conviction not reversed on appeal for refusal of change of venue, except on clear showing of abuse of trial court's discretion.*

   The granting of change of venue is so largely in the discretion of trial court that a judgment of conviction of crime will not be reversed on appeal on the ground that a change of venue has been refused unless it clearly appears that the trial court abused its discretion.

2. HOMICIDE. *Refusal to direct verdict of not guilty held not error.*
   Evidence in homicide case examined, and *held,* that trial court committed no error in refusing to direct a verdict of not guilty.

3. HOMICIDE. *Accused, who, after engaging in combat, struck deceased with dangerous weapon, causing death, held guilty of "manslaughter."*

   Where the defendant and deceased engaged in protracted altercation and combat, the anger of each being highly aroused against the other, resulting in the defendant not in necessary self-defense striking the deceased a blow on the head with a dangerous weapon, causing his death, the defendant is guilty of manslaughter, as defined by section 1238, Code of 1906 (Hemingway's Code, section 968), providing that the killing of a human being in the heat of passion, without malice, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be "manslaughter."

4. HOMICIDE. *Charge on manslaughter, leaving out phrase "in the heat of passion," held not harmful to accused.*
   The instruction given for the state, in which is left out the phrase "in the heat of passion," was not harmful, but advantageous to the defendant.

5. CRIMINAL LAW. *Accused, convicted of manslaughter, cannot complain on appeal of court's failure to define manslaughter, if he did not ask for such instruction.*

A defendant, tried for murder and convicted of manslaughter, cannot complain of the failure of the court to define manslaughter, if he did not ask for such an instruction.

*Headnotes 1. Criminal Law, 17 C. J., Section 3577; Application for change of venue disturbed only in case of abuse of discretion, 27 R. C. L., 828; 2. Homicide, 30 C. J., Section 570; 3. Homicide, 29 C. J., Section 111; 4. Homicide, 30 C. J., Section 711; 5. Criminal Law, 16 C. J., Section 2451.

APPEAL from circuit court of Chickasaw county, first district.

HON. THOS. E. PEGRAM, Judge.

A. W. Dalton was convicted of manslaughter, and he appeals. Affirmed.

*B. N. Knox,* for appellant.

An application for a change of venue, in the form prescribed by statute, presents a *prima-facie* showing for such change. *Magness* v. *State,* 103 Miss. 30. In the case at bar the appellant's affidavit was supported by the affidavits of two other resident citizens of Chickasaw county. To this the state introduced proof by several witnesses, but in each case, as the record will disclose, the witness was basing his opinion upon the high standard of citizenship of the county, or his personal opinion, on the theory that a "jury ought to be had from our county that would give the appellant a fair trial."

In the case at bar the proof by the state shows, from the officers of the court, that it would be a very hard job to get a jury. These facts place this case on the same basis as *State* v. *Tennison,* 79 Miss. 708, where this court said the lower court erred in not granting the change.

The court granted the state an instruction, defining the crime of manslaughter, which was the only pro-

nouncement of the law touching the crime of manslaughter that was given the jury by the learned court, and this pronouncement was glaringly incorrect. It absolutely precluded the appellant from availing himself of the defense given him by section 961, Hemingway's Code, sections b and c, which is as follows: "The killing of any human being by the act, procurement or omission of another shall be excusable . . . (b) When committed by accident and misfortune, in the heat of passion upon any sudden and sufficient provocation."

The jury was misled into believing that, regardless of whether the killing was by accident and misfortune, in a sudden heat of passion upon sufficient provocation, they should convict the defendant of manslaughter. I submit that this erroneous statement of the law was fatal and deprived the appellant of a fair and impartial trial.

What proof is there to warrant the trial judge in submitting this case to the jury on a question of murder and of manslaughter? There is none, unless the learned trial judge was mistaken in his conception of the law then, as he was when he later charged the jury, and thought that the defendant had committed a crime, because there was proof that the defendant killed a man, without authority of law, without malice, and not in necessary self-defense. The state not only failed to prove the defendant guilty beyond all reasonable doubt, but did prove by all the evidence that Roland Kirby met his death as the result of a blow inflicted by appellant in absolute self-defense of his life. What jury, had it not been influenced, consciously or unconsciously, by the hostile public sentiment, would have returned a verdict of "guilty" against this appellant? If this defendant is guilty of a crime, or if a crime has been proven by the state in this case, then section 960 (f) of Hemingway's Code, purporting to tell the citizens of Mississippi when they are justified in taking the life of their fellow human being is "nothing but a scrap of paper." Clearly,

in this state of the proof, the court should have sustained the appellant's motion for a directed verdict of "not guilty."

*J. L. Byrd,* assistant attorney-general, for the state.

I. It is alleged that the court erred in refusing to grant a change of venue, on motion seasonably made by the appellant. The appellant made the statutory request, accompanied by the proper affidavit, and quite a number of witnesses were introduced both for the state, and for the defendant, on the question of· the state of mind of the people of Chickasaw county.

Counsel for appellant insists that this case falls within the rule announced in *Magness* v. *State,* 103 Miss. 30. We submit; however, that this case does not fall within this rule, since the state had more than met the burden placed on it by the *prima-facie* case made out by appellant. · Every witness introduced in behalf of the state, and there were numerous witnesses, testified that the defendant could, in their opinion, get a fair and impartial trial, and that his case had not been prejudged.

The record, as a whole, discloses that the defendant could, and as far as the record shows, did get a fair and impartial trial, and there was no error in the action of ·the court in overruling the motion for change of venue. See *Mackie* v. *State,* 138 Miss. 740, 103 So. 379.

II. Appellant argues that the court erred in overruling the appellant's motion for a peremptory instruction, and that the verdict of the jury was unwarranted, as the state's witness testified that the appellant acted in self-defense. We wish the court to bear in mind that the defendant introduced no evidence, but preferred to rest his defense on the record made by the state. His defense was self-defense, and this court is left to the determination of the one question, whether or not the facts revealed by the record are sufficient to justify the de-

fendant in anticipating death or some great bodily harm at the hands of the deceased at the time the fatal blow was struck. With the testimony in the record we submit that the jury was entirely correct in arriving at the verdict which it did.

III. Complaint is made of instruction given at the request of the state. This instruction undertakes to define manslaughter, but one important element of manslaughter is omitted from the instruction, and that is that of "heat of passion." We submit, however, that if this instruction was erroneous, it was a harmless error, because the record shows beyond question that there was an element of manslaughter in the case, and if the jury found a verdict of manslaughter and there was testimony on which to base it, the fact that the instruction erroneously defined manslaughter could not harm the defendant.

ANDERSON, J., delivered the opinion of the court.

Appellant, A. W. Dalton, was indicted in the circuit court of Chickasaw county for the murder of Roland Kirby, and convicted of manslaughter, from which judgment he prosecutes this appeal.

Appellant made application to the trial court for a change of venue on the ground that the public mind was prejudiced against his cause, and therefore he could not get a fair and impartial trial in Chickasaw county. His application was overruled, and that action of the court is urged by the appellant as a ground for reversal of the judgment of conviction. Appellant made the *prima-facie* showing prescribed by the statute for a change of venue. Thereupon both the appellant and the state introduced witnesses who gave evidence on the question. There was some evidence tending to show that there would be some difficulty in getting fair and impartial jurors from certain sections of the county. A number of

witnesses testified, however, that in their judgment there was no such prejudice in the public mind as would pre-vent appellant from procuring a fair and impartial trial.

The granting of a change of venue is a matter so largely in the discretion of the trial court that a judg-ment of conviction will not be reversed on appeal on the ground that a change of venue has been refused, unless it clearly appears that the trial court abused its discre-tion. *Stewart* v. *State,* 50 Miss. 587; *Bishop* v. *State,* 62 Miss. 289; *Regan* v. *State,* 87 Miss. 422, 39 So. 1002. The trial court saw and heard the witnesses testifying on this question, saw their manner and deportment, and therefore had a better opportunity of judging their credibility and the weight to be given their evidence than this court has by reading the evidence in the record. There was substantial evidence to sustain the action of the court in denying the change of venue. We are, there-fore, unable to say that the trial court abused its dis-cretion in refusing to grant a change of venue.

Appellant contends that the trial court erred in re-fusing his motion to direct a verdict of acquittal. In or-der to determine the merits of this contention, of course, it is necessary to have in mind the controlling facts of the homicide, and, in passing on the facts, the evidence must be taken most strongly against the appellant. Every material fact tending to· show appellant's guilt either directly or by reasonable inference must be tak-en as true. So, viewing the evidence, substantially the following case was made by the state: Besides the com-batants, the only eyewitness to the homicide was the wit-ness Reid Chenault. Appellant struck Kirby one blow on the head with a stick about one and one-half inches in diameter and from two and one-half to three feet in length. The blow was struck on the 15th of March, 1925, and Kirby died from its effects on the 20th of the same month. Chenault and appellant were at the depot of the Gulf, Mobile & Northern Railroad Company in Hous-ton on the day of the homicide until about two o'clock

in the afternoon. As they were leaving the depot the deceased, Kirby, came up in his car, stopped, and asked them if they had anything to drink. They replied that they had not. Kirby then stated that he had, and pulled back his coat, showing a bottle of whisky in his pocket. Thereupon Kirby asked appellant and Chenault to get in his car and ride around with him, which invitation they accepted. They drove into the woods about two miles from Houston, and stopped the car and got out. They sat down on the ground, and proceeded to play poker and drink whisky. Before the homicide took place there were two or three altercations between Kirby and the appellant, in all of which Kirby was the aggressor. Kirby lost all the money he had in the poker game. During one of the altercations Kirby and appellant both drew their knives. Chenault kept them apart, and finally succeeded in getting both of them to turn their knives over to him, which he took and kept. At one time Kirby got a stick and attempted to strike appellant with it, and appellant ran and got out of the way. At another time Kirby knocked or pushed the appellant down, and struck him a blow about the face or forehead somewhere, which cut the skin sufficiently to make the blood flow. This occurred immediately before the homicide. Kirby had appellant down when this blow was struck. Chenault pulled Kirby off of appellant, and separated them. Appellant arose from the ground, and Chenault was between appellant and Kirby with his back to appellant and facing Kirby. Kirby was trying to get to appellant, and Chenault was trying to keep him away. Kirby was still the aggressor, as he had been all the way through. Neither of them had any weapon that Chenault saw. While thus situated, Kirby being in front of Chenault trying to get to appellant, the latter passed around Chenault, and struck Kirby with the stick described above. Chenault did not see when or from where appellant got the stick. Kirby fell; his skull being crushed by the blow, from which he died later. At the

time of the fatal blow appellant was still bleeding from the blow which he had received from Kirby. However, the latter was in front of and in full view of both Chenault and appellant when appellant struck him, and Chenault testified (appellant not going on the witness stand) that Kirby had no weapon in his hands with which he could either kill or do appellant any great bodily harm.

In our judgment these facts make a typical case of manslaughter, as defined by section 1238, Code of 1906 (Hemingway's Code, section 968). It was the killing of a human being in the heat of passion, without malice, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense. The jury so found by their verdict, and the evidence was sufficient to sustain their finding. This was not a case for a peremptory instruction of not guilty.

Appellant urges that the trial court erred in charging the jury on the crime of manslaughter. First, appellant contends that the fifth instruction given for the state on manslaughter is erroneous, in that the phrase "in the heat of passion" was left out of it. That instruction is in this language:

"The court charges the jury for the state that manslaughter is the killing of a human being without malice, without authority of law, and not in necessary self-defense. And, if you believe from the evidence in this case beyond a reasonable doubt that defendant so killed the deceased, then he is guilty of manslaughter, and you will so find."

We are of the opinion that the leaving out of the instruction of the phrase "in the heat of passion" was not only harmless to appellant but favorable to him. By the instruction as given the court said to the jury that, if appellant killed the deceased without authority of law with a dangerous weapon, and not in necessary self-defense, he was guilty of manslaughter. The jury had a right to infer therefrom that appellant was guilty of

manslaughter, even though he killed the deceased deliberately and not in any heat of passion whatever.

Appellant contends, second, that the court erred in not going further and charging the jury as to the elements of manslaughter as defined by section 1231, Code of 1906 (Hemingway's Code, section 961), especially as set out in subdivision (b) of said section. Appellant's position is that under the undisputed facts in the case, if appellant did not kill the deceased in self-defense, at most it was only homicide committed by accident and misfortune, in the heat of passion, upon a sudden and sufficient provocation.

Even though it be true that an instruction under that provision of the statute would have been appropriate to the facts in this case, the court was not required to give the instruction unless it was asked either by the state or by the appellant. This court has held in a number of cases that it is no ground for a reversal of a judgment because of the absence of an appropriate instruction where the complaining party has asked for no such instruction. A defendant tried for murder and convicted of manslaughter cannot complain of the failure of the court by instruction to define manslaughter, if he did not ask for such an instruction. *Shubert* v. *State,* 66 Miss. 446, 6 So. 238; *Canterbury* v. *State,* 90 Miss. 279, 43 So. 678.

We are of opinion that in the trial of this case there was no error committed prejudicial to appellant.

*Affirmed.*