223 So.2d 651 (1969)
Wayne BOYLES
v.
STATE of Mississippi.
No. 45461.
Supreme Court of Mississippi.
May 26, 1969.
Rehearing Denied July 3, 1969.
*652 Townsend & Young, Drew, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
This is an appeal from the Circuit Court of Sunflower County, Mississippi, wherein the appellant, Wayne Boyles, who had been indicted for murder for the July 7, 1968, killing of Claude Hughes at Mr. Rogers' store on Sunflower Plantation, having entered a plea of "not guilty," was tried and convicted of the crime of manslaughter and was sentenced to twelve years in the Mississippi State Penitentiary at Parchman.
According to the testimony of the appellant, he went to Rogers' store on two separate occasions on July 7, 1968, the first time being about noon. The appellant testified that the deceased was at the store about noon and that the deceased asked the appellant if he would buy him, the deceased, a beer. The appellant returned to the store about sundown, and at that time the deceased again asked the appellant about the beer he owed him. The appellant testified that he told the deceased that he did not owe him any beer. The appellant further testified that he had drunk one beer at the store at noon and two when he returned about sundown. Henry White, the father-in-law of the deceased, testified that the deceased first asked the appellant for a beer outside the store and again after the two had gone inside the store. Harry Rogers, the owner of the store, testified that the appellant had drunk three cans of beer and that the appellant got up and went over to the stool near the door where the deceased was sitting and said to the deceased, "You have not bought me no beer, you x.x.x., I will kill you." Tommy Hughes, son of the deceased, testified that the appellant pushed his father out of the door and stated, "I am going to kill you." *653 The appellant denied making these threats. The deceased went outside the store in front of the appellant. Tommy Hughs testified that his father picked up a coca-cola case, but dropped it, and that the appellant ran to his pick-up truck to get his pistol. Mrs. Carroll testified that the appellant said either that he was going to kill the deceased or shoot him and that he was using vile language toward the deceased and that when she saw the appellant push the pistol which he had obtained from under the seat of his car into the stomach of the deceased, she fell down on the floorboard and that she heard two or possibly three shots. It is undisputed that when the appellant secured his pistol, which was then in the holster, and ordered the deceased to back up, the deceased grabbed with both hands the pistol and jerked appellant away from his truck. They wrestled over the gun. Three shots were fired, one striking appellant in the left side of the throat and two entering the deceased's body in the lower stomach or abdomen. Tommy Hughes testified that the first shot fired by appellant struck his father when his father was some nineteen steps away from the appellant. The deceased fell on the concrete porch, face downward, and was bleeding when Deputy Sheriff Herman Parker arrived. Parker pronounced him dead. When C.O. Sessums, Jr., Sheriff, arrived, he listened for a heart beat on deceased's back or for any sign of life, and heard none. Then he checked to see if Claude Hughes was breathing, but did not detect any sign of life.
The record further discloses that the appellant delivered himself to the police station at Drew, Mississippi, where he awaited arrival of the sheriff. When the sheriff arrived, the appellant voluntarily handed him the pistol; and at the time that the pistol was received from the appellant, the appellant stated that he had shot a man.
Several assignments of error are urged, some of which require but slight comment; nevertheless, we will accord them such consideration as is necessary. The first error urged is that the state failed to prove the corpus delicti by substantial evidence. A review of the pertinent facts as above set forth disposes of this assignment of error for the reason that the death of the deceased was conclusively shown, not only by the testimony of Mr. Parker, Mr. Sessums and Mr. Rogers, based upon their observations at Rogers' store, but by the fact that the body was taken to the funeral home where it was undressed and where the two other bullet wounds in the abdomen were detected by the sheriff and the deputy sheriff.
It is undisputed that a difficulty arose and that the deceased was shot three times and that the shots were fired by the appellant. As was pointed out in Elliott v. State, 183 So.2d 805 (Miss. 1966), the criminal agency as to the cause of the death can be established by circumstantial evidence and reasonable inferences drawn from the evidence. However, in the case at bar the cause of death was shown not only by circumstantial evidence but by actual evidence insofar as hearing the shots being fired is concerned. The record discloses that the weapon was a nine shot H. & R. double action revolver. The sheriff testified that he took six live 22 cartridges and three hulls or cartridges which had been fired from the pistol which appellant handed to him. The proof shows that there were three bullet holes in the deceased. Tommy Hughes testified that "Mr. Wayne shot my father." Even in the absence of this direct testimony on the part of the sixteen year-old son of the deceased, the circumstantial evidence presented sufficiently warrants the finding on the part of the jury that the deceased was shot and killed by the appellant; and therefore, we find that the State properly proved the corpus delicti. King v. State, 251 Miss. 161, 168 So.2d 637 (1964); Keeton v. State, 175 Miss. 631, 167 So. 68 (1936); Perkins v. State, 160 Miss. 720, 135 So. 357 (1931); Pitts v. State, 43 Miss. 472 (1870).
Insofar as the second error urged is concerned, which is that the court erred *654 in overruling the appellant's motion for a new trial on the ground that the verdict of the jury was against the overwhelming weight of the competent evidence, we conclude with assurance that the impartial and objective testimony of Mrs. Carroll and Mr. Rogers, together with the other testimony offered by the witnesses in this case, establishes the fact that the appellant shot and killed the deceased and that there was ample evidence upon which the jury could find that the appellant was not in imminent danger of losing his life or of suffering great bodily harm. The basic testimony with reference to any great bodily harm which might have been done to the appellant was that relating to the deceased picking up a coca-cola case as he went outside the store. The record, however, shows that he dropped this coca-cola case and that at the time he was shot he had nothing in his hands except the barrel of the pistol which appellant had obtained from his truck, and was doing nothing which could possibly be considered as an act of aggression that would justify the taking of his life in the prevention thereof. Hinton v. State, 246 Miss. 790, 151 So.2d 413 (1963). In addition, the appellant was six feet two inches tall and weighed 240 pounds, while the deceased was six feet tall or better and weighed between 160 and 170 pounds and was unarmed as far as the record discloses.
Though not in the order assigned, we turn to the fifth error urged, which is that the trial court committed error in permitting the admission of the appellant to be placed in evidence for the reason that the appellant was not warned of his constitutional rights after being taken into custody and prior to the time that he made the admission. Appellant relies for the most part upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). The facts in the Miranda case differ completely from the facts in the case at bar. Moreover, the facts in the case at bar are remarkably similar to the facts in Nevels v. State, 216 So.2d 529 (Miss. 1968). As is pointed out in the Miranda decision, supra, the purely voluntary and spontaneous admissions of a person who is in custody prior to interrogation are admissible. It is stated in Nevels v. State, supra, as follows:
Under all of these circumstances, the trial court admitted in evidence Nevels' confession as being volunteered and spontaneously given immediately after he came under the fence. The confession was properly admissible in evidence, not being in violation of the Miranda rule. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 [10 A.L.R.3d 974] (1966). Miranda states: "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. (384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.)" 216 So.2d at 530.
As was true in Nevels v. State, supra, so also in the case at bar. The statement "I have shot a man" was given "freely and voluntarily, without any compelling influences." When the sheriff went into the police station at Drew, Mississippi, where the appellant had gone and voluntarily surrendered, the record discloses that the appellant handed the sheriff the pistol and said that he had shot a man. In Spurlin v. *655 State, 218 So.2d 876 (Miss. 1969), this Court again recognized the rule that a statement of an arrested person freely and voluntarily given, without compelling influences, is a recognized exception set out specifically under the Miranda rule. This was a voluntary statement and is not barred by the Fifth Amendment to the United States Constitution or Section 26 of Article 3 of the Mississippi Constitution of 1890, as amended.
The other three assignments of error relate to Instructions 2, 3 and 7. Instruction No. 7 reads as follows:
The Court instructs the jury for the State that while it is true that under the law a man has a right to repel force with force even to the extent of killing his assailant in self-defense, yet, before he may justify his act in so doing by such plea of self-defense, he must have good reason to believe and must honestly believe that he was then and there in danger, real or apparent, of being done great bodily harm or losing his life at the hands of such assailant, and such danger must appear to be imminent and impending; mere fear, apprehension or belief alone on the part of the defendant that the deceased meant to do him great bodily harm or to take his life, unaccompanied by an overt act, however sincerely entertained by such defendant, would not justify such defendant in killing the deceased.
Appellant contends that the words "unaccompanied by an overt act," while correct as an abstract legal proposition as they exist in the instruction, are incorrect and erroneous as applied under the facts in this case. We fail to find any merit in this contention under an objective review of all the facts taken together with the determination by the jury of those facts which are in dispute. Moreover, a substantially identical instruction was approved in Carter v. State, 169 Miss. 285, 152 So. 876 (1934). It should be noted that Instruction No. 7 embodies the essential facts which will justify the repelling of force even to the extent of killing an assailant in self-defense, the first being that before one may justify his act in so doing by such plea of self-defense he must have good reason to believe and must honestly believe that he was then and there in danger, real or apparent, of great bodily harm or losing his life at the hands of such assailant and such danger must appear to be imminent and impending. The correctness of this part of Instruction No. 7 has been approved by this Court in Coleman v. State, 22 So.2d 410 (Miss. 1945), and Harris v. State, 47 Miss. 318 (1872). The second portion of Instruction No. 7 granted for the State is concerned with the fact that mere fear, apprehension or belief alone on the part of the defendant that the deceased meant to do him great bodily harm or to take his life, unaccompanied by an overt act, how ever sincerely entertained by such defendant, would not justify such defendant in killing the deceased, has been held to be a correct statement of law dealing with homicide, as shown by Holmes v. State, 199 Miss. 137, 24 So.2d 90 (1945); Ransom v. State, 149 Miss. 262, 115 So. 210 (1928); Johnson v. State, 140 Miss. 889, 105 So. 742 (1925); and Head v. State, 44 Miss. 731 (1871).
Instruction No. 3 which was granted the State is as follows:
The Court charges the jury for the State that murder is the felonious killing of a human being with malice aforethought, and with the premeditated design to take the life of the party killed; and that manslaughter is the felonious killing of a human being in the heat of passion and in sudden combat and without malice aforethought and without the deliberate design to take the life of the party killed.
The first portion of this instruction dealing with murder is erroneous for the reason that it fails to incorporate the essential ingredient that the killing was done "without authority of law." Miss.Code 1942 *656 Ann. § 2215 (1956); Motley v. State, 174 Miss. 568, 165 So. 296 (1936); Hays v. State, 130 Miss. 381, 94 So. 212 (1922); and Rutherford v. State, 100 Miss. 832, 57 So. 224 (1912).
The second part of this instruction is also defective because it does not incorporate the essential elements required by Section 2226 of the Mississippi Code of 1942 Annotated (1956). It does not include "without authority of law, and not in necessary self-defense." McNeal v. State, 115 Miss. 678, 76 So. 625 (1917). When this is added the instruction has been held to be correct. Mazie v. State, 54 So.2d 734 (Miss. 1951). However, this Court held in Dalton v. State, 141 Miss. 841, 105 So. 784 (1925) that: "A defendant tried for murder and convicted of manslaughter cannot complain of the failure of the court by instruction to define manslaughter, if he did not ask for such an instruction. Shubert v. State, 66 Miss. 446, 6 So. 238; Canterbury v. State, 90 Miss. 279, 43 So. 678." 141 Miss. at 849, 105 So. at 786. We pointed out in King v. State, 251 Miss. 161, 168 So.2d 637 (1964), that a jury could return a verdict of manslaughter even though the jury had not been so instructed.
While it is evident that this instruction is incorrect, nevertheless we do not concede that the giving of this instruction under the facts of this case constituted reversible error, because this instruction to the jury on manslaughter, though inaptly drawn, probably prevented the jury from returning a murder verdict.
The third error assigned by the appellant relates to Instruction No. 2, which is as follows:
The Court instructs the jury for the State that every killing of a human being without authority of law is either murder or manslaughter. Murder, when done with the deliberate design to effect the death of the person killed, and manslaughter when done in the heat of sudden passion, without malice and without any premeditation.
Appellant urges that the granting of this instruction constitutes reversible error. We cannot agree with appellant's contention under the facts in this case although in Murphy v. State, 89 Miss. 827, 42 So. 877 (1906) and in Lofton v. State, 79 Miss. 723, 31 So. 420 (1901) we criticized this instruction. Subsequent thereto, it was not found to be reversible error in Crawford v. State, 54 So.2d 230 (Miss. 1951), Johnson v. State, 46 So.2d 924 (Miss. 1950), and Wiggins v. State, 199 Miss. 114, 23 So.2d 691 (1945). As was pointed out in McGehee v. State, 138 Miss. 822, 104 So. 150 (1925) wherein we discussed an instruction substantially the same as that in the case at bar we stated that the clause "and not justified by law" embodies the connotation of "not in necessary self-defense." We conclude therefore that Instruction No. 2, when read with all the other instructions in the case at bar, does not constitute reversible error. Moreover, the appellant cannot complain of any of the instructions which relate to murder for the reason that the jury did not find him guilty of murder, but of manslaughter.
The instructions granted the State except for Instruction No. 7 deal primarily with illegal homicide and what constitutes murder and manslaughter, not with self-defense. The instructions for appellant deal with the issues of self-defense and present the applicable rule of law. Considering all of the instructions together, we conclude that the jury was properly instructed as to the law under the disputed facts and was justified in rendering a verdict of manslaughter. We cannot possibly hold that the jury could have been misled to the prejudice of the appellant since the verdict was one of manslaughter when a verdict of murder might have been rendered.
We have carefully reviewed the facts and studied the briefs and the authorities cited therein and considered not only the authorities cited in the briefs but other authorities, and we are forced to the conclusion that reversible error has not been *657 committed in this case. For the foregoing reasons, the judgment is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, JONES and SMITH, JJ., concur.