## Smith *v.* State.*

[105 So. 758.   No. 24931.]

(Division A.   Nov. 9, 1925.)

1. Criminal Law.   *Argument to be confined to testimony and proper inferences therefrom.*

   Argument of counsel should be confined to the testimony and proper inferences therefrom, and not contain a charge of relations not shown by or fairly inferable from testimony.

2. Criminal Law.   *Charge in argument unsupported by testimony of relations as motive, held prejudicial.*

   A charge in argument of illicit relations of deceased and defendant with a certain woman, having no support in the evidence, with resulting jealousy as the motive for the killing, *held* prejudicial.

---

*Headnotes 1. Criminal Law, 16 C. J., Sections 2235, 2242; 2. Criminal Law, 17 C. J., Section 3638.

Appeal from circuit court of Leflore county.

Hon. S. F. Davis, Judge.

Homer E. Smith was convicted of murder, and he appeals.   Reversed and remanded.

*J. W. Bradford,* for appellant.

A prosecuting attorney may exercise considerable latitude in presenting his case to the jury and may argue all matters that may be properly inferred from the evidence but is never permitted to go out of the record and inject an issue which has never been hinted at by the evidence, and of which the jury knows nothing.   The county prosecuting attorney is an officer not only of the court, but an elected officer of the county, and when statements are made by him to a jury, especially of the kind and character made by the prosecuting attorney in this case,

upon matters not in the record, he becomes a witness, and because of his office his statements carry great weight, therefore, the jury believed that not all of the facts came out in the evidence, but they could see through it all now since the statements of the county attorney had been made, and promptly found the defendant guilty.

As the county attorney proceeded in his argument to state that jealousy and jealousy alone caused Smith to assassinate Darnell, using the exact language embraced in the bill of exceptions to which we direct the court's attention, appellant immediately objected, and objections being overruled the county attorney proceeded with more vehemence and enthusiasm to continue a repetition of the same accusations and charges in his argument to the jury. This argument on the part of the county attorney so inflamed the passions of the jury that appellant after this argument never had a chance for an acquittal. This argument deprived him of the benefit of a fair and impartial trial under the law and evidence. Such action is reversible error.

The supreme court of Wisconsin, in *Brown* v. *Swineford,* 44 Wis. 282, 28 Am. Rep. 582, nearly fifty years ago announced the law relating to the high mission of attorneyship. See *Rowe* v. *State,* 101 So. (Ala.) 91, where it is quoted with approval.

In *Rowe* v. *State, supra,* the court held that where the testimony of the state witnesses was to the effect that they found locked up in a trunk, a copper worm to a still, and some connections, this being all of the testimony relating to the still, a statement by the solicitor, "Why, if the court please, he had a whisky still in that house at that time," was reversible error. See *Collins* v. *State,* 54 So. 666; *Whit* v. *State,* 87 Miss. 564, 40 So. 324, 112 Am. Rep. 460.

Statements of a prosecuting attorney which have no basis in the facts developed by the evidence, and which are calculated to arouse prejudice in a murder case

where the evidence is of a doubtful character are grounds for reversal. *Sykes* v. *State,* 89 Miss. 766, 42 So. 875; *Magness* v. *State,* 103 Miss. 30, 60 So. 8.

In a murder trial the prosecuting attorney's vigorous urging for conviction, characterizing accused as a bad negro, although the evidence did not support this charge, and stating he never prosecuted innocent persons, constitutes reversible error, where the court sustains accused's objection to the remarks, but did nothing further. *Kelley* v. *State,* 103 Miss. 850, 74 So. 679.

Our courts have consistently condemned heated and passionate arguments by attorneys calculated to inflame the minds of the jury against the prisoner, where not justified by the evidence. See *Middleton* v. *State,* 80 Miss. 393, 31 So. 809; *Long* v. *State,* 81 Miss. 448, 33 So. 224; *Harwell* v. *State,* 93 So. 366; *Strong* v. *State,* 98 So. 806; *Evans* v. *State,* 54 So. 154; *Martin* v. *State,* 63 Miss. 505; *Brow* v. *State,* 103 Ind. 133; *People* v. *Dane,* 59 Mich. 550; *House* v. *State,* 9 Tex. App. 567; *Sassee* v. *State,* 68 Wis. 530; *Stone* v. *State,* 22 Tex. App. 185; Note to *Donald* v. *People,* 126 Ill. 150, 9 Am. St. Rep. 547; *Hampton* v. *State,* 88 Miss. 257, 40 So. 545, 117 A. S. R. 740; *Fielding* v. *People,* 158 N. Y. 542, 70 A. S. R. 493, 2 R. C. L. 416, and Note 18.

We insist that because of the error on the part of the court in permitting the county attorney, in his argument to the jury, to use the language set forth in the bill of exceptions, this case ought to be reversed and remanded for a new trial.

*J. L. Byrd,* Assistant Attorney-General, for the state.

Appellant's whole brief is directed to the remarks of the county attorney which were objected to, and were made the subject of a bill of exceptions. The remarks of the county attorney were to the effect that the motive for the killing was jealousy of the appellant on account

of the relations between the deceased and Mrs. Jackson. The appellant cites a great many authorities with reference to statements by prosecuting attorneys in their arguments to the jury. All of the authorities cited are, we think, good law, but we do not think the present case comes within the condemnation of these cases. It is true that a prosecuting attorney, or any other attorney for that matter, has no right to comment on matters which are not in issue and about which there is no testimony; but we submit that a careful reading of this record will show that the county attorney could reasonably infer from the testimony as to the acts of the deceased, and the acts of the appellant, that there was brobably some ground for his statement. The circuit judge refused to sustain objections to the line of argument made by the county attorney, and he had heard all of the evidence; had watched the trial from its beginning, and he was in a better position to know than this court could be, because many things occur in the trial in the lower court which would give the trial court an opportunity to know these things, whereas it would be difficult to determine them on appeal. Unless the motive was, as charged by the county attorney, we must search in vain in this record for a motive, because the testimony is silent as to any other reason whatever as to why the appellant would ambush and murder the deceased.

But if we admit for the sake of argument that the remarks of the county attorney were not warranted by the testimony, were his remarks of such nature as to prejudice the case of the appellant to the extent of causing this court to reverse? We submit that they were not; that looking at this testimony as a whole the jury could not have arrived at any other verdict except the one at which they did arrive, and if the remarks of the county attorney were erroneous, that the error was harmless.

This is a remarkably clear record, with very few objections, and with no incompetent testimony admitted,

and with no proper instructions refused, and we submit that the trial was without error, and the verdict of the jury was amply sustained by the testimony, and that the cause should be affirmed.

Argued orally by *J. W. Bradford,* for appellant, and *J. L. Byrd,* Assistant Attorney-General, for the state.

COOK, J., delivered the opinion of the court.

The appellant was convicted in the circuit court of Leflore county, and sentenced to the penitentiary for life, and from this conviction and sentence this appeal was prosecuted.

A. L. Jackson and his wife, who were present at the time of the fatal shooting, were the principal witnesses for the state, and their testimony, if believed, warrants the verdict of the jury, while the defendant's testimony tends to support the theory of self-defense. At the time of the killing and for several years prior thereto, the defendant and the witnesses, Jackson and his wife, lived in the same home. For several months prior to the killing the deceased had been engaged in logging near the home of the Jacksons, and there was testimony of threats made by him to take the life of the deceased, and of an attempt to carry into effect these threats on the day before the killing, but there is no testimony whatever as to the origin or cause of the trouble between these parties.

The only assignment of error that is seriously pressed is based upon certain language used by the county attorney in his argument before the jury, the language complained of being as follows:

"Gentlemen of the jury, there is no use getting away from the issue; jealously caused Smith to kill Darnell. Smith had been in this house with Jackson's wife, and enjoyed certain privileges. Darnell had come in and was

taking Smith's place in this family, and Smith was jealous, and that was the reason Smith assassinated this man, Darnell. That is the issue in this case. You can't get away from it. Darnell was taking Smith's place. He was aroused by jealousy, and to get rid of Darnell he waylaid him in the crib and assassinated him.''

The special bill of exceptions further recites that:

''Upon the making of said remarks by the county attorney in the prosecution of this defendant, counsel for this defendant in open court objected to the remarks aforesaid upon the ground that the testimony in the record did not justify the argument by the prosecuting attorney, which objections were by the court overruled, and defendant excepted; whereupon the said prosecuting attorney continued for a period of ten or twelve minutes to repeat in substance and in different language that jealousy, and jealousy alone, caused Smith to assassinate Darnell, and enlarged upon the so-called motives, the substance of which, as stated above in the quotations, were repeated time and time again over the objections of counsel for this defendant.''

This language would be understood as a direct charge of improper relations between the defendant and the witness, Mrs. A. L. Jackson, and between the deceased and Mrs. Jackson, while a search of the record fails to disclose any testimony showing the existence of any such illicit relations, or from which such relations may be fairly inferred. The only testimony in the record as to the relations of any of these parties is the fact that the defendant lived in the home of the Jacksons, and the testimony of the defendant himself that the deceased spent the night before the killing at the home of the Jacksons; that he left there early the next morning, and later returned and again went away, accompanied by both Mrs. Jackson and her husband. The destination and purpose of this trip is fully explained by the witnesses for the state. These bare facts do not warrant any in-

ference of improper conduct on the part of any of these parties, and this argument was an effort to supply a motive for an unjustifiable killing when none whatever appears from the record. While great latitude must be allowed counsel in matters of argument, the argument should be confined to the testimony and the proper inferences or deductions to be drawn therefrom. The argument in this case injected an issue that finds no support in the evidence, and the telling force with which this argument was used is shown by the recitals of the bill of exceptions that, after the objections to the argument had been overruled, the prosecuting attorney continued for a period of ten or twelve minutes to repeat in substance, and in different language, that jealousy, and jealousy alone, caused the defendant to assassinate Darnell, and enlarged upon the so-called motives, the substance of which, as stated above in the quotation, was repeated time and time again over the objections of counsel for the defendant. We think this argument was prejudicial, and consequently the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*