PERKINS *v.* STATE.

(In Banc.   June 15, 1931.   Suggestion of Error Overruled, July 10, 1931.)

[135 So. 357.   No. 29429.]

Dinkins & Wilroy, of Hernando, for appellant.

722

**W. A. Shipman**, Assistant Attorney-General, for the state.

724

**Smith, C. J.,** delivered the opinion of the court.

The appellant was convicted of murder and sentenced to be hung.

The evidence for the state discloses that John C. Harbin, who was sixty-three years of age and in good health, lived alone on a small farm in a one-story four-room house. The appellant, his servant and tenant, lived about three hundred yards therefrom. One of Harbin's customs was to read at night, sitting in a chair leaning against the side of his bed. About ten o'clock one night, his house was discovered by a passerby to be on fire. Several of his neighbors reached the scene shortly thereafter, but the house was too far consumed for the fire to be checked. An odor of burning flesh came from the house, and, when the walls thereof had fallen sufficiently therefor, a human skeleton was seen "with some flesh on the frame of the body" lying across the springs of a bed, and, after the fire had reached a stage to so permit, parts of a skull and other bones, which an undertaker then present said were human bones, were re-

moved from the bed springs. One of the bones still contained portions of burnt flesh. The position of the bones indicated that the body was lying crosswise on the bed springs, the position of which corresponded to the position of the bed in which Harbin slept. Harbin's spectacle case, key ring, and keys were found near the bed springs. Harbin was last seen at his house on the afternoon of the day preceding the night the house was burned.

A witness who lived a short distance from Harbin stated that he arrived at the burning house about ten o'clock that night, and called Perkins, who answered from his (Perkins') house, and, on being asked if he knew Harbin's house was burning, answered, "Yes."

One of Harbin's children, a son, lived about twelve miles from Harbin's resident, and several parties, one of whom was the appellant, while the house was burning, went in Harbin's automobile to this son's residence and told him that the house was burning. The appellant, according to the evidence of his companions, requested to be allowed to get out of the automobile before reaching Harbin's son's house, stating they were driving too fast. They declined to stop for that purpose, and said that they were not driving fast. This the appellant denied.

A few days after the burning of Harbin's residence, the appellant was arrested and carried to Memphis where a daughter of Harbin lived, and was there turned over to the police, who seemed to have advised Harbin's daughter that there was no case against the appellant. The appellant was released, returned to Mississippi, lived for a short while with Harbin's son, and then moved some miles away to a farm owned by a Mr. Bridgforth, where his wife then was.

Some months after the burning of the house, the sheriff, accompanied by a deputy and two detectives, who had been employed by members of Harbin's family to ascertain by whom he had been killed, went at night to the appellant's residence at the Bridgforth farm and

arrested him. He then denied, according to the sheriff, that he was Perkins, and said that his name was Smith.

A written confession by the appellant was then offered in evidence, but, on objection thereto on the ground that it has not been shown to be free and voluntary, the following evidence was introduced by the state:

About ten o'clock a. m., several days after his arrest, the appellant, then in jail, sent for the sheriff, and confessed to him that he killed Harbin. The sheriff asked him if he was willing for this confession to be reduced to writing and then sign and swear to it. To this the appellant agreed, and about two o'clock p. m., on the same day he was carried by the sheriff and several deputies from the jail to the sheriff's office, where he dictated a confession to a stenographer without being, in any way, coerced into so doing. After the confession had been reduced to long hand, it was signed and sworn to by him before the chancery clerk. The appellant was handcuffed while being carried to and from jail, but not while in the sheriff's office while the confession was being made. The sheriff and his deputies were armed with pistols, but the appellant was in no way menaced therewith.

At the conclusion of this evidence, counsel for the appellant again objected to the introduction of the confession, whereupon the court said: "If this is all your proof, I am ready to rule on its admissibility. If you have further proof, I will hear it."

No evidence was offered by counsel for the appellant, and the objection to the admission of the confession was overruled.

The confession was then introduced, and reads as follows:

"Hernando, Miss., June 14, 1930. This 14th day of June, 1930, I do make this statement of my own free will that on the night of July 11, 1929, between eight and nine o'clock, I did kill Mr. John Harbin by crushing

his skull with an axe while he was seated in a chair in his living room, at Mr. Harbin's home near Lake Cormorant. After I knocked Mr. Harbin in the head with an axe, I robbed him of his pistol. Got two cans of gas out of the side room and poured over the house and lighted match and ran home across the road where I lived in front of Mr. Harbin's. The reason I killed Mr. Harbin, Mr. Harbin had been fooling with my wife, and I had asked him to quit and he wouldn't do it, and I was afraid of him and this was the only time I had a chance to get even with him. I was alone and done all of this work myself.

"[Signed]                    Oscar Perkins."

The chancery clerk was then introduced and testified as follows:

"A.  Mr. Campbell came to my office and said 'I want you to take an affidavit.' I walked in the office and Mr. Campbell and about five or six others were in the office, and Mrs. Jewell Entriken had written out a confession for them by this negro, Oscar Perkins. I first read the confession over to Oscar, and I said to Oscar, 'Is that a fact' and he said 'that is just the way it happened.' I said, 'all right, sign this.' He signed the confession and it was witnessed by half a dozen of them and then it was said they wanted him to swear to it.

"Q. .Who said that? A. Mr. Campbell. I then said to Oscar, 'Oscar, before you swear to this let me read this over to you again.' I read it over to him again. I said, 'Oscar, before you sign this let me tell you. If you sign this it may break your neck. I want to know if you are signing this voluntarily and of your own accord, and nobody making you sign it. If it is not true, don't sign it.' He said, 'It is exactly the way it happened.' He signed it."

The sheriff said that the appellant also told him that "Mr. Harbin was sitting leaning back against the bed . . . and that he knocked him in the head with an axe."

728

The state then rested its case.

The appellant testified in his own behalf. He denied having killed Harbin or burnt the house, and said that he did not, but that his wife did, tell the sheriff, when he was arrested, that their name was Smith.

He further testified, in substance, as follows: On the way from the place of his arrest to the jail, he was hanged by the neck to a tree and a fire was built under or near him in an effort to make him tell who committed the crime. He had on his clothing and boots which were not burned, but said that a place on his leg was. A doctor, who examined his leg while he was in jail, said that there was evidence of a burn thereon. While he was in jail, the sheriff, accompanied by two detectives, visited him. The latter told him they cared nothing about the matter, but were after money, and told him to say that he killed Harbin; that the sheriff left the jail while the detectives were there, and, in the sheriff's absence, they said "they were going to get a measure for a corpse," laid him on the bed, and measured him with a string after hitting him with a pistol. When the sheriff carried him from jail to the sheriff's office, he was accompanied, in addition to one or more deputies, by the two detectives, who again told the appellant to say that he did it, because all they were after was the money. Several people were in the sheriff's office when the confession was made, and "a gun was lying on the desk." One of the detectives dictated the confession to a stenographer, and, after it was reduced to long hand, it was signed and sworn to by the appellant. It was read to him by both the stenographer and the chancery clerk, but not until after he had signed it. The confession was not true. On being asked how he came to sign the confession, he answered, "He told me to sign it; I did not know what I was signing;" and, on being asked if he was scared, replied, yes sir, who would not be scared, the way a person was done;" that he had no sense at all.

The state's evidence in chief had negatived mistreatment of the appellant on the way from the place of his arrest to the jail, or any attempt then or thereafter to extort a confession from him, or that he was left alone with the detectives at any time by the sheriff.

No motion was made by the appellant at the close of the evidence to exclude the confession; the only objection thereto being the objection made when it was offered.

A special bill of exceptions discloses that the court overruled the objection to the following statement made by one of the prosecuting attorneys in his closing argument to the jury, "The women and the children and the homes of De Soto county call upon you to do your duty in this case."

The appellant's contentions are: First, his confession should not have been admitted for the reason that it was not shown to have been freely and voluntarily made; second, the evidence is insufficient to sustain the verdict, for the reason that there is no evidence of the corpus delicti aliunde the confession; and third, the objection to the argument of the prosecuting attorney should have been sustained.

When the confession was offered, the evidence of the state disclosed that it was freely and voluntarily made, and the appellant should have then introduced his evidence in denial thereof. Ellis v. State, 65 Miss. 44, 3 So. 188, 7 Am. St. Rep. 634; Lee v. State, 137 Miss. 329, 102 So. 296. As hereinbefore stated, no motion was made to exclude the confession after the appellant's evidence came in, but, aside from that, had such a motion been made, the court below would not have been justified in excluding it. The appellant does not claim that he was induced to make the confession by the hope of a reward, and the evidence sufficiently discloses that he was not coerced into making it.

There must be proof of the corpus delicti in a criminal case aliunde the confession of the accused, and in Pitts v. State, 43 Miss. 472, it was said that it must be beyond a reasonable doubt. This rule was modified and brought in line with the weight of authority in Heard v. State, 59 Miss. 545, wherein the court said: "Where there has been a confession by the accused, much slighter proof is required to establish the corpus delicti than would be necessary where the state must make out the entire case, unaided by a confession. Any corroborative proof in such a case will be held sufficient which satisfies the mind that it is a real and not an imaginary crime which the accused has confessed, and the fact that he was the guilty party may be found by the jury, on proof much slighter than that ordinarily essential."

The rule there made is still adhered to by this court. Walker v. State, 127 Miss. 246, 89 So. 921; Patterson v. State, 127 Miss. 256, 90 So. 2; Garner v. State, 132 Miss. 815, 96 So. 743; Wood v. State, 155 Miss. 298, 124 So. 353; and Pope v. State, 158 Miss. 794, 131 So. 264; Compare Barron v. State, 111 Miss. 231, 71 So. 374.

In the Heard case, the confession was made to a committing magistrate, but the court dealt with it as if it were strictly an extrajudicial confession, citing in support of its holding People v. Badgley, 16 Wend. 53, wherein the confession under consideration was extrajudicial, as were the confessions in the later cases decided by this court.

The corpus delicti here is: (1) The death of Harbin, (2) caused by a criminal agency. Pitts v. State, supra. Both of these elements may be proven by circumstances.

That the body of a human being was consumed by the fire which destroyed Harbin's residence, and that the body was Harbin's, is hardly open to doubt. The death of Harbin being proven, whether it was caused by a criminal agency "becomes a proper subject of pre-

sumptive reasoning upon all the facts and circumstances of the case." Pitts v. State, supra.

A criminal agency as the cause of the burning of the house could not be inferred from the mere fact that the house was burned. Barron v. State, 111 Miss. 231, 71 So. 374; Rayborn v. State, 115 Miss. 730, 76 So. 639. But when we add to the burning of the house the facts that the body of a human being, who was alive and in good health a few hours before, was consumed therein, that no reason appears for suspecting suicide or inability on the part of a normal human being who might be in the house at the time to become aware of the fire and escape before death overtook him, the inference that the human being whose body was burned in the house was killed by another, and the house burned to conceal the crime, while not excluding all doubt thereof, permits the mind to rest with sufficient confidence thereon to be satisfied that it is a real and not an imaginary crime which this appellant has confessed.

Assuming, but not deciding, that the argument of the prosecuting attorney was improper, it cannot be said to have been sufficiently so to justify a reversal of the case. The alleged statement of fact contained in the argument ought to be true, for it goes without saying that every citizen should desire a jury to do its duty in any case.

Affirmed, and sentence to be executed on Thursday, July 23, 1931.

**Anderson, J.,** delivered a dissenting opinion.

The majority opinion recognizes the principle declared in Barron v. State, 111 Miss. 231, 71 So. 374, that criminal agency cannot be inferred from the mere fact of the burning of the house, but holds that the facts that the body of a human being, who was alive and in good health a few hours before the house was burned, was consumed

by the fire, and that no reason appeared for suspecting suicide, or inability of a normal human being who might be in the house at the time to become aware of the fire and escape before death overtook him, were sufficient to show criminal agency in the burning of the house—that the crime which appellant confessed was a real and not an imaginary crime. The opinion states: "The inference that the human being whose body was burned in the house was killed by another, and the house burned to conceal the crime, while not excluding all doubt thereof, permits the mind to rest with sufficient confidence thereon to be satisfied that it is a real and not an imaginary crime which this appellant has confessed."

In Pope v. State, 158 Miss. 794, 131 So. 264, 265, the court, in discussing the question as to the sufficiency of the evidence aliunde the confession of the defendant to show that the crime which the defendant confessed was a real and not an imaginary crime, used this language: "In order for the corpus delicti to be established by evidence aliunde the confessions, it is not necessary that the proof aliunde should show the crime or corpus delicti beyond a reasonable doubt, *but it is sufficient to show it by a preponderance of the evidence or by evidence amounting to a probability* [italics mine], and then the confessions will be received, and, if the confessions coupled with the proof of the corpus delicti aliunde show the corpus delicti beyond a reasonable doubt, it is sufficient." The decision in that case in no wise altered or modified the rule laid down in Heard v. State, 59 Miss. 545, and other cases following that in which the court held that the evidence, other than the confession of the defendant, must be sufficient to show that the crime charged against the defendant was a real and not an imaginary crime.

The question is whether the preponderance of the evidence, other than the confession of the appellant, amounts to a probability, under the circumstantial evidence rule to be now stated, that the house was burned through

criminal agency. In considering this question, it must be borne in mind that the evidence, other than the confession, to establish criminal agency, is entirely circumstantial; therefore the rules which obtain with reference to that character of evidence are controlling. In Algheri v. State, 25 Miss. 584, Morris' State Cases, 658, the court held that, while circumstantial evidence was in its nature capable of producing the highest quality of moral certainty, yet experience and authority admonished that it is a species of evidence in the application of which the utmost caution and vigilance should be used, that it was always insufficient where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true, "for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth. *Whenever, therefore, the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be.*" (Italics mine.) The quoted language of the court in that case was reaffirmed in Hogan v. State, 127 Miss. 407, 90 So. 99.

Now the question is, Does the evidence in this case, other than appellant's confession, go beyond establishing a "finite probability" of criminal agency? If it does not, it "cannot amount to proof, however great the probability may be."

The deceased lived and slept in the house that was burned, and had his meals cooked there. What about the reasonableness of the hypothesis that the burning of the house was nonincendiary but accidental, and caught the deceased in a deep sleep, natural or unnatural, and, before he was awakened sufficiently to extricate himself, he was so disabled by the fire and the falling of logs (it was a log house) that he could not do so? It seems to me that that hypothesis is about as reasonable as the hypothesis

734

that the deceased was murdered and the fire incendiary. If that be true, under the circumstantial evidence rule laid down in those cases, the evidence on which the majority opinion stands "cannot amount to proof, however great the probability may be."

It follows from these views that there was not sufficient corroborating evidence of the corpus delicti to justify the admission of the appellant's confession.