MILLETTE v. STATE.

(Division A. June 12, 1933.)

[148 So. 788. No. 30424.]

Stovall & Stovall, of Okolona, and B. H. Loving, of West Point, for appellant.

176

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

Appellant, Fred Millette, was jointly indicted with his wife, Mrs. Mabel Millette, for burglarizing the drug store of A. C. Cox in West Point. There was no motion for a severance, and the two defendants were tried together at a special term of the court. On the first trial of the case there was a mistrial because the jury failed to agree; later in the term they were again put upon trial, which resulted in the acquittal of Mrs. Millette and the conviction of Fred Millette, who was sentenced to serve a term in the state penitentiary.

On the morning of June 23, 1932, A. C. Cox discovered that his drug store had been entered during the preceding night, and that some toilet articles, cigarettes, and a large quantity of narcotics had been stolen therefrom. He kept his narcotics locked in a special case. He discovered that his store had been entered from a skylight on the roof. A ladder was found leaning against the store, which was identified as being a ladder removed from a laundry nearby. The skylight had been pried up and entry made thereby. Cox discovered this early in the morning and promptly reported it to the marshal of West Point. Mr. West, the marshal, immediately began making an investigation and found that the appellant and his wife had been registered at the Brown Hotel, under the assumed name of Jerome, for some time. They had checked out at two-thirty on the morning of the twenty-third. On the night before they had been seen

coming into the hotel about nine-thirty and to go to their rooms, after which the appellant was seen to leave the hotel and was not seen to return, but the porter on night duty saw them as they left, for they settled their hotel bill with him. It was discovered that the Millettes had driven about the town late at night, and it was the special duty of the officers to make observations of cars so used; they drove a car with an Arkansas tag and number. It was learned that they had applied to a physician for narcotics, and the officer testified that because of the peculiar condition of their eyes he recognized them as narcotic addicts. This evidence of the marshal of West Point was heard by the court out of the presence of the jury.

After making the investigation, Mr. West telephoned a number of nearby towns requesting the arrest of Millette and his wife, giving a description of them and of their car. Among others he called the marshal, Penn Knox, of Okolona, Mississippi. He told him that these suspects had left the town and gave him a description and asked for their apprehension. Knox replied that he knew the parties. The telephone conversation occurred in the forenoon; at about four o'clock Knox arrested, without a warrant, Fred Millette in a drug store and promptly incarcerated him in jail. En route to the jail Millette told Knox that his car was across the street and they could ride to the jail. Knox declined this offer. Thereupon he went out to the home of a justice of the peace and brought him back to town, and the latter issued two search warrants; Knox making the affidavits therefor. Then he searched the Arkansas car and found therein a rope ladder with metal rungs fastened thereon, a piece of rope of like description, and an auger and bits therefor. These articles were offered in evidence. When the justice of the peace issued the two search warrants, one to search the car and the other to search the home of Will Lester, a negro living in the country about two miles from Okolona and not within the corporation, he orally

deputized Knox to serve the warrants; there being no constable, sheriff, or deputy available at the time.

Knox, accompanied by the justice of the peace and two others, went to the country to the home of Will Lester. They met him and inquired if Mrs. Millette was in his home. He replied that she was. Knox then asked him about the stolen articles; the negro denied any knowledge of them, but invited the officers to go through the house and make a search. Thereupon all the men went to the room of Mrs. Millette, where, according to Knox, they saw her drop a tube of morphine and saw two bottles of Hinds' Honey and Almond cream. He promptly placed her under arrest, informing her that he was arresting her for the robbery of a drug store in West Point the night before. He asked her where the articles were which came from the drug store. He testified that she told him if he would not put her in jail she would point out some of the articles. She pointed out a sack in the hall about three feet from the door of her room which contained some of the stolen goods. Knox gave her some morphine and did not confine her in jail. He never mentioned to Lester or to Mrs. Millette that he had the search warrants. For several reasons these search warrants were void, and they were not offered in evidence by the state on the trial of the case in the court below. Knox carried the sack of stolen articles and Mrs. Millette to the city hall, and by that time, about four-thirty or five o'clock in the afternoon, Mr. Cox and the marshal of West Point were there. Mr. Cox promptly identified many of the articles as having been in his store and stolen therefrom. Millette and his wife were then carried to Okolona and placed in jail. A day or two thereafter Millette asked the sheriff if he still had the narcotics and begged the sheriff to slip some of the morphine out of the safe for him. The sheriff declined to do so, and thereupon Millette said, speaking of the narcotics: "Not all of that belongs to Mr. Cox; all of it did not come out of his store; he has got no right to this that did not come out of his

store.'' And, according to Cox, there were some narcotics in the sack which were not from his store.

There was some contradiction of Mrs. Millette's and Knox' statements, and some facts which we do not deem necessary to state. The appellant objected to all material testimony offered by the state, and at the conclusion of its evidence moved to exclude all of it. This motion was overruled by the court.

Mrs. Millette was offered as the first witness for the defendants, and she testified that her husband had written articles for magazines under the nom de plume of Jerome, and she offered two articles in evidence. She said that about two weeks before they came from Helena, Arkansas, through Okolona to West Point. How long they remained in West Point is not shown. She said that on the night of the robbery she and her husband came into the hotel about nine-thirty and that her husband was out later for about thirty minutes. She denied any knowledge of the burglary and denied that her husband had any part therein. She admitted that they wanted to get an early start and checked out of the hotel at about two-thirty in the morning, drove to Okolona, where they had an early breakfast, and finally drove out to the home of Will Lester, a negro who was the strawboss of Millette's mother, who owned a plantation near Lester's home. She said that they had seen Lester as they went through and had arranged to rent rooms from him on their return; that when they arrived they agreed to pay Lester three dollars and fifty cents a week, which they did not pay, and that Lester provided a dinner which they ate about noon; that her husband drove to town on some mission, leaving about two P. M.; that a strange man in khaki clothes appeared there and inquired for her husband and asked permission to leave a sack for her husband. She consented and told him to place it in the hall, where it was discovered by the officers. She had not seen this stranger before or since that occasion she testified. She admitted that she pointed out this sack to the

officers, but denied any knowledge of its contents. Knox did not testify that she claimed to know the contents. Her statement was in no sense a confession. She denied any knowledge of the alleged crime and denied that she was arrested until they started to leave Lester's home.

There was other evidence offered tending to contradict some statements made by various witnesses for the state. At the conclusion of the evidence the appellant moved that all the evidence be excluded and a peremptory instruction be granted, because the evidence was insufficient to sustain a conviction. This motion was made jointly and severally. Millette moved the court to exclude the statement of Mrs. Mabel Millette as to the sack and its contents, because it was not free and voluntary and was not admissible against him. He moved to exclude all the evidence with reference to the search of the car and with reference to the search of the house which Mrs. Millette claimed her husband had rented from Lester. All of these motions were overruled by the court.

The defendants requested the "one juror" instruction, which is as follows: "The court charges the jury for the defendants that it is the sworn duty of each and every juror to vote on each and every ballot of the jury for an acquittal of the defendants, until and unless the mind of such juror is convinced beyond all reasonable doubt and to a moral certainty, from the evidence or want of evidence, and after conferring with the other jurors, of the guilt of the defendants and that a juror cannot under his oath as a juror compromise his honest convictions from the evidence or the want of evidence as to the guilt or the innocence of the defendants for the purpose of bringing in a verdict, but that under his oath and under the law that a juror should never surrender such conviction from or because of any thing or reason whatsoever or for any purpose whatsoever, as long as it remains his conviction from the evidence or the want of evidence in the case, and after consultation with his fellow jurors."

First. It is insisted that the evidence was insufficient to sustain a conviction. As this case must be reversed, we do not desire to comment upon the evidence any more than is necessary to decide it, but in our opinion there was ample evidence to sustain the conviction here, although it was an issue of fact properly submitted to the jury.

Second. Appellant insists that it was error for the court below to permit the declaration of Mrs. Millette, when pointing out the sack containing the stolen goods, to be admitted against him; that the court should have excluded the evidence as against this appellant, for at the time Mrs. Millette made the statement her husband was in jail and not present. However, when Mrs. Millette went upon the stand as a witness for both, she testified to substantially the same facts as were testified to by the witnesses for the state, except she went further into detail. No state witness testified that she made a statement that amounted to a confession or any more than the bare material fact of pointing out the sack which was afterwards found to contain the stolen articles. No request was made by the appellant of the court to instruct the jury not to consider the evidence of the officers as to Mrs. Millette's statements as against him. It is not doubted that the evidence was competent as against Mrs. Millette. See Pickens v. State, 129 Miss. 191, 91 So. 906. If it be conceded that it was error to admit the officers' testimony as to Mrs. Millette pointing out the sack of stolen goods, when she went upon the stand and testified substantially to the truth of those statements the appellant cannot complain. See Weatherford v. State (Miss.), 143 So. 853.

Third. It is next contended that it was error for the state to go into the question of probable cause for the arrest in the presence of the jury. West, the marshal of West Point, was examined out of the hearing of the jury, and the court announced that it would not permit any hearsay evidence derived by West by his investigation of

the crime to go to the jury. The appellant did not offer any evidence on the question of probable cause, and the court held that this evidence was sufficient to establish probable cause for the arrest of Millette and his wife. Nowhere in the record did the appellant ever request that the witness Knox be examined out of the presence of the jury; therefore, no error can be predicated on that action of the court. See Draughn v. State, 76 Miss. 574, 25 So. 153; Randolph v. State, 152 Miss. 48, 118 So. 354; Perkins v. State, 160 Miss. 720, 135 So. 357.

Fourth. It is next urged that there was not probable cause for the arrest and search of the rented premises of appellant in the home of Will Lester. We think the court below very properly held that there was probable cause for the arrest of the defendants without warrants, and that it is clear from all the evidence that the search of the house was an incident to the arrest of Mrs. Millette. Section 1227, Code of 1930, authorizes an officer or a private citizen to arrest a person who has committed a felony, or when a felony has been committed and he has reasonable grounds to suspect and believe that the person he proposes to arrest has committed it, or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. See Kennedy v. State, 139 Miss. 579, 104 So. 449.

The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409. Therefore, the search of Lester's home, incident to the arrest, was competent as against Mrs. Millette although not competent as against Millette.

Fifth. It is next contended that the search of Millette's car was unlawful and not made as an incident to his

arrest. It will be remembered that the officer did not search the car in the presence of or while it was under the manual control of the appellant; he carried him to the jail, locked him therein, then went out to the home of the justice of the peace, brought the latter back to town, swore out a search warrant, and then searched the car. The car belonged to Millette. This court held, in the case of Falkner v. State, 134 Miss. 253, 98 So. 691, that section 23 of the Constitution applied not only to the home but to the "possessions" of the accused; and thereafter section 1975, Code of 1930 (chapter 244, Laws of 1924), was enacted, authorizing the search of an automobile upon probable cause, but only in cases involving intoxicating liquors. The rule in the Falkner case, together with the fact that the legislature enacted a special law authorizing the search of automobiles upon probable cause without warrant where violations of the prohibition law are involved, appears to settle that the automobile, in so far as the search for stolen goods is concerned, is the "possession" of appellant and is to be as sacred from search as his house or other possessions. In the Agnello case, supra, the court held that where Agnello had been arrested in the home of Alba and placed in jail, and his room, several blocks from the home of Alba, searched while he was being carried to jail, the search thereof was illegal, and the evidence obtained by the illegal search was incompetent as against Agnello. We think the same rule applies here. Knox searched the automobile in pursuance of his belief that he had a valid search warrant, and did not search it in pursuance of and incident to the arrest of appellant. Millette had been in jail some time, and Knox did not seize and search the car at the time he made the arrest, but the car was left during that interval parked on a street unguarded and out of the control of Knox or Millette. Legally Knox could have searched the car at the time he arrested Millette, but he did not. This evidence as to that search was material and harmful to the appellant, Millette, and

should have been excluded. The attention of the court below was specifically called to this point at least twice. It is reversible error.

Sixth. The failure to give the "one juror" instruction is reversible error. See Speaks v. State, 161 Miss. 334, 136 So. 921, and authorities there cited.

It was not error for the court to grant the instruction to the state that the recent possession of stolen property made a prima-facie case of guilt against the appellant in the absence of a reasonable explanation. The explanation offered by Mrs. Millette is the same "man in the moon" defense offered in the case of Wiley v. State, 129 Miss. 196, 91 So. 906. Joint possession of a husband and wife is presumed to be that of the husband until the contrary appears. See Wylie v. State, 151 Miss. 897, 119 So. 825; Garland v. State (Miss.), 146 So. 637.

For the admission of the evidence obtained by the unlawful search of the automobile and the refusal of the "one juror" instruction, this case is reversed and remanded for another trial.

Reversed and remanded.