KING *v.* STATE

No. 43225 November 16, 1964 168 So. 2d 637

*Robert B. Smith,* Ripley; *Douglas D. Shands,* Tupelo, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

RODGERS, J.

This is an appeal from a judgment of the Circuit Court of Lee County sentencing appellant to serve a term of twenty years in the State Penitentiary. Appellant was tried upon an indictment charging him with murder. The jury returned a verdict finding him guilty of manslaughter.

The events and circumstances leading to appellant's conviction are shown by the State to have begun about 8:30 o'clock on the night of April 19, 1963, at a place of business operated by him, called a "bootleg joint." The deceased, Arthur Thompson, in company with Ed Boyd and Boyd's wife, Mrs. Bobbie Nell Boyd, went to appellant's place of business in Boyd's pickup truck. Arthur Thompson purchased one-half pint of corn whiskey, and after change had been made from a $5 bill advanced for the purchase of the whiskey, the appellant used harsh words, threatening Ed Boyd. Arthur Thompson got out of the truck and had a dispute with appellant. They went over to a place near appellant's truck where the appellant suddenly began to beat Thompson.

He knocked him down, picked him up and knocked him down again. He stomped Thompson while he was lying on the ground so that Thompson's head was mashed in. The witnesses said Thompson ceased to breathe and he was apparently dead. Boyd and his wife left the scene of the assault and waited for Thompson down the road but he never came. William Fair, appellant's Negro employee, testified that he assisted appellant to load the body of deceased, Thompson, onto an uncovered pick-up truck. Appellant and William Fair drove the truck about the county, and after having obtained shovels at the home of appellant, they attempted to bury the body in one place but were unable to do so. The body was then transported to another place where a pit was dug and the body was put into the grave, face up. The arms of the deceased were rigid, in a position as if he were carrying wood. Later, the officers made an effort to locate the body at the place pointed out to them by William Fair but they were unable to do so, although they used bulldozers to dig for the body. The witness, Fair, told them that he had thrown a knife belonging to deceased into a creek, and the officers found the knife, which was later identified by a son of Thompson as belonging to him. Much bulldozer grading had been done near the place where Fair claimed the body had been buried. Part of this bulldozer work had been done by appellant. After the vicious attack alleged to have been made upon Thompson, his body was examined by William Fair and his common-law wife. Ida Mae Harmon testified that after the fight he was breathing but ''later he was not.'' Fair said his eyes were half open and his arms were ''just like he was carrying an armful of stovewood.'' The witness, Fair, testified that they left the body in the bushes for some several hours but later they buried it.

The defendant took the witness stand and testified that he had had no altercation with Thompson and denied

all of the testimony of the State's witnesses to the effect that he had had a fight with the deceased. Mrs. Ervin King testified that she was in the house and did not see or hear a commotion. The jury found defendant guilty of manslaughter.

Appellant has assigned and argued thirteen grounds of error alleged to have occurred in the trial of the case in the circuit court.

Appellant contends that the trial court erroneously overruled his motion for continuance because of the absence of a material witness. When the case was set for call, appellant summoned one Malcolm Swindol. This witness was not found. When the case was called to fix a day when it could be tried, appellant filed a motion for continuance, alleging that Swindol was a material witness and would testify that he was present at the time and place where the alleged crime was said to have occurred, and he believed he would testify that he had had no altercation with Thompson. This motion was overruled and appellant complains that he should have been granted a continuance so that this witness could have been located and summoned.

The case was later tried, and it is a singular fact that not one of the witnesses, including defendant himself, testified that Malcolm Swindol was present at the time of the alleged beating, or that he was present at the place where the alleged beating is said to have occurred. Defendant named all of the persons who came to his place at the time of the alleged assault and Swindol was not one of those named.

 ██ Capital cases are required to be tried during the term in which the indictment is returned, unless good cause is shown to the contrary. See Dean v. State, 234 Miss. 376, 106 So. 2d 501 (1958); Mississippi Code Annotated section 2518 (1942).

The last line in Mississippi Annotated Code section 1520 (1942) is as follows: "A denial of the continuance

shall not be ground for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom.''

▇▇ The granting of a continuance is largely within the sound discretion of the trial court, and a judgment will not be reversed because the continuance is refused unless there has been an abuse of sound discretion. Woodruff v. State, 220 Miss. 24, 70 So. 2d 58 (1954); Gatlin v. State, 219 Miss. 167, 68 So. 2d 291 (1953).

▇▇ There is no evidence of abuse of discretion on the part of the court in failing to grant a continuance because of the absence of Malcolm Swindol on the ground that he was present at the time and place where the alleged crime was committed. Moreover, we are of the opinion that the rule set out in Lamar v. State, 63 Miss. 265, 271 (1885), applies here wherein this Court said: ''In view of the frequency of these applications we deem it advisable to repeat what has been before substantially said as to the correct course to be pursued by a defendant who applies for a continuance. To begin with, he should promptly issue summonses for all witnesses who may be material for his defense; for any witness who has been served with process and who has failed to appear as commanded he should ask for an attachment, which will never be refused by the court; in capital cases he should apply for a continuance before the venire is drawn, setting out in his affidavit the names and residences of the absent witnesses, the facts expected to be proved by them, and should also show to the court what steps have been taken to secure their attendance; he should negative the idea that they are absent with his consent or procurement, and if any reasons are known to him why they are not present, these should be stated.

▇▇ ''If the court declines to grant the continuance he should sue out the proper process for them, and when the case is called for trial should renew his ap-

plication, make such changes in his affidavit as the conditions then existing require. ██ ██ If the continuance is still refused, he should with unremitting diligence seek to secure their attendance pending the trial by the continued use of the process of the court; if tried and convicted he should still persist in his efforts to enforce their attendance before the expiration of the term, and on his motion for a new trial present them to the court for examination; if, with all of his efforts, he is unable to have the witnesses personally present, he should, if practicable, secure their ex parte affidavits, which should be presented for the consideration of the court, which, on the motion for a new trial, will review the whole case and correct any error prejudicial to the defendant which may appear in any part of the proceeding.''

██ ██ This rule has been reaffirmed in Eslick v. State, 238 Miss. 666, 119 So. 2d 355 (1960); Shoemaker v. State, 222 Miss. 257, 75 So. 2d 647 (1954). Appellant did not comply with this rule, although he states in his brief that ''Soon after the motion for a new trial was heard, this witness was, in fact, located at his usual place of abode in Pontotoc County, an adjoining county to the place of the trial.'' The action of the trial court, therefore, in overruling the motion for continuance, cannot now be urged as ground for reversal of the judgment.

██ ██ The appellant complains that the court erred in admitting in evidence a map or plat drawn by a witness, and later requiring him, over his objection, to revise and correct it. The freehand drawing complained of showed the physical surroundings of the place where the crime is said to have been committed. The houses,' fences, trees and the location of floodlights on the building were set out on the map in relation to each other. This map was not drawn to a scale, and the distances between the buildings and fences were not measured.

The witness testified that he was accustomed to measuring, and the use of tapes and measurements in his previous road work, and the jury was advised that the plat or map was an estimate of the witness as to distance. We are of the opinion that the introduction of the map in evidence was discretionary with the trial court. Baggett v. State, 219 Miss. 583, 69 So. 2d 389 (1954); Underhill's Criminal Evidence section 120, p. 165 (4th Ed. 1935). We are also of the opinion that the trial court did not make an error in giving defendant an opportunity, on cross-examination, to point out anything on the drawing which he thought was wrong in the plat. ▉ ▉ The cross-examination of defendant with reference to the map was proper. See Dent v. Luckett, 242 Miss. 559, 135 So. 2d 840 (1961).

The State of Mississippi offered testimony during the trial to show the physical condition of deceased after the alleged beating: that his head was mashed in, his eyes were half open, he was not breathing, the witnesses could not hear his heart beat, and his arms were rigid as if he were "carrying stovewood." Thereafter, a qualified pathologist was offered as an expert witness by the State. He was asked a hypothetical question as to whether or not, in his medical opinion, the subject was living or dead, assuming the facts testified to by witnesses to be true. He replied "It is my opinion that the subject was dead." He was then asked whether he had any opinion as to cause of the death of deceased, and he replied "The trauma which you described incident to this beating is certainly ample to have resulted in a number of injuries which could have caused death."

Appellant complains that these questions were not competent because the witnesses who testified were "untrained" and the questions should have been framed so as to inform the doctor of this condition. Moreover, it is said, Ida Mae Holleman testified that she saw Arthur Thompson breathing. That testimony, however,

goes further and says he was breathing for awhile but "then he was not."

We are of the opinion that the hypothetical questions propounded and answers of the pathologist were proper, and the evidence was admissible at the time it was offered. See Cates v. State, 171 Miss. 106, 157 So. 95 (1934); Prewitt v. State, 106 Miss. 82, 63 So. 330 (1913); Earp v. State, 38 So. 288 (Miss. 1905).

It is pointed out in Underhill's Criminal Evidence section 237, (4th Ed. 1935), at pp. 443-444 that "The opinion of expert witnesses is best presented to the jury by means of a hypothetical question * * * Each party to an issue may submit hypothetical questions to expert witnesses, assuming facts therein reasonably consistent with the facts in evidence, and which accord with his theory of the case. It is not imperative that hypothetical questions cover all the undisputed facts in evidence; but an hypothetical question may be asked a medical expert embracing practically all the evidence on the question of the homicide. The form of an hypothetical question is a matter within the sound discretion of the court. Hypothetical questions should be based on facts disclosed by the evidence, or facts fairly inferable from the evidence or which the evidence tends to prove. Hypothetical questions are improper when there is no evidence to sustain the facts assumed."

The appellant contends that the court should have granted a peremptory instruction in his favor, discharging him, because the State failed to prove the corpus delicti beyond a reasonable doubt. It is argued that the fact of death was never proved beyond a reasonable doubt — the body was never found, and there was no conclusive evidence that the alleged deceased met his death by a criminal agency, propelled or used by defendant. It is urged by appellant that the testimony of William

Fair is not worthy of belief and the corpus delicti stands or fails on his testimony.

The record reveals, however, that other pertinent testimony was given in addition to that of William Fair that he helped defendant bury deceased. Mr. and Mrs. Boyd saw defendant knock Thompson down several times, and kick and stomp his head while he was on the ground. Ida Mae Holloman's testimony shows that Thompson died a very short time after the beating at the place where the assault occurred. Moreover, the truck which belonged to deceased remained at Boyd's place where it was parked the night of the alleged assault; and Thompson has never been seen in the neighborhood since.

██ █ The corpus delicti in criminal homicide cases, involves two elements: (1) The fact of death. (2) The existence of the criminal agency of another as the cause of death. Buford v. State, 219 Miss. 683, 69 So. 2d 826 (1954); Watts v. State, 210 Miss. 236, 49 So. 2d 240 (1950); Brooks v. State, 178 Miss. 575, 173 So. 409 (1937); 41 C. J. S. *Homicide* section 312, p. 5 (1944).

██ █ In the case of Pitts v. State, 43 Miss. 472, 480 (1870), this Court said: "The main question presented by the record in this case for our consideration is, was the corpus delicti sufficiently established by the evidence on the trial in the court below, to justify the conviction of the accused. In order to arrive at a correct conclusion it is necessary to understand in the first instance, what is meant by the terms 'corpus delicti,' or in other words, 'the body of the offense charged.' The corpus delicti is made up of two things: first, certain facts forming its basis; and secondly, the existence of criminal agency as the cause of them. In a case of felonious homicide, it consists of two substantial fundamental facts: 1st. The fact of the death of the deceased; and 2d. The fact of the existence of criminal agency as the cause of the death. The first of these constituents

is always required to be proved either by direct testimony, or by presumptive evidence of the strongest kind. And the second of these constitutents becomes a proper subject of presumptive reasoning upon all the facts and circumstances of the case." This Court has followed the rule that both elements of corpus delicti may be proved by circumstantial evidence. Parkins v. State, 160 Miss. 720, 135 So. 357 (1931).

There are very few instances where the body, or parts of the body, of the deceased is brought into the courtroom to be exhibited to the jury, although this was done in this State. See Keeton v. State, 175 Miss. 631, 167 So. 68 (1936). ██ ██ The law does not require an autopsy or medical evidence to establish death. These facts are ordinarily proved by witnesses who saw the deceased after his death and who testified that the deceased was dead. ██ ██ The criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis.

██ ██ We are of the opinion — after carefully examining the record — that the evidence is ample to establish the corpus delicti, and the trial court acted properly in refusing to direct a verdict acquitting defendant. Burdo v. State, 151 Miss. 161, 117 So. 528 (1928).

██ ██ During the argument, the county attorney said to the jury: "There has been enough time since April 19, 1963, the day the incident occurred, and the time that William Fair pointed out the place the body of Arthur Thompson was buried, for the defendant to have moved the body from the place indicated by William Fair * * *."

The attorney for defendant objected to this argument, and the objection was overruled by the trial judge. Appellant now insists that the trial court committed prejudicial error in so doing, because there was no evi-

dence of a grave or place where a body had been interred. Appellant cites authority for the proposition that an attorney cannot go outside the record and argue facts not shown in the evidence.

We are of the opinion, however, that these authorities do not aid us in determining the question here involved. An attorney has the right to draw inferences from the evidence introduced, and we are of the opinion that the statement made by the county attorney in the instant case was a fair inference drawn from the evidence, that the body was buried in the area where the search was made by officers. Garrett v. State, 187 Miss. 441, 193 So. 452 (1940); Stewart v. State, 170 Miss. 540, 155 So. 347 (1934); Bradford v. State, 166 Miss. 296, 146 So. 635 (1933); Blackwell v. State, 161 Miss. 487, 135 So. 192, 137 So. 189 (1931); Callas v. State, 151 Miss. 617, 118 So. 447 (1928); Smith v. State, 141 Miss. 772, 105 So. 758 (1925); Berry v. State, 22 So. 826 (Miss. 1897).

 ██ The State requested, and the court granted, an instruction on manslaughter in which the court advised the jury that "manslaughter is the killing of a human being without malice * * * in the heat of passion with a dangerous weapon, without authority of law." Appellant contends that this instruction was prejudicial because no testimony was offered showing that defendant killed Arthur Thompson "by the use of a deadly weapon."

It is also argued that an instruction on manslaughter should not have been given in this case under the facts here shown because defendant was either guilty of murder or no crime at all.

The instruction referring to the use of "a dangerous weapon" was obviously drawn under Mississippi Code Annotated section 2226 (1942). It should have been drawn under, and in accordance with, Mississippi Code Annotated section 2224 (1942) which is as follows: "The

killing of a human being, without malice, in the heat
of passion, but in a cruel or unusual manner, without
authority of law, and not in necessary self-defense, shall
be manslaughter.''

The evidence in this case shows that defendant stomp-
ed deceased to death, and it is apparent that the jury
returned the proper verdict, although it could have de-
termined that defendant was guilty of murder under
the facts here presented. The State obtained five in-
structions and appellant obtained twenty instructions.
We are of the opinion that the instruction complained
of was not prejudicial to defendant because the jury
could have returned a verdict of ''guilty of manslaugh-
ter'' without an instruction to that effect. See Triplett
v. State, 159 Miss. 365, 132 So. 448 (1931). It is true
that there is no evidence in this record showing that
the boots of defendant were in fact dangerous weapons,
as was done in the case of Blaine v. State, 196 Miss.
603, 17 So. 2d 549 (1944), but in the case of Dalton v.
State, 141 Miss. 841, 105 So. 784 (1925), wherein a man-
slaughter instruction was given the State leaving out
the phrase ''in the heat of passion'', this Court held
the instruction was not harmful but in fact advantageous
to defendant. In the case of Robinson v. State, 223
Miss. 303, 78 So. 2d 134 (1955), where a shotgun was
used to effect the death of deceased, the Court said that
leaving out the phrase ''by the use of a deadly weapon''
in an instruction on manslaughter was harmless. We
are therefore of the opinion that adding the phrase ''with
a dangerous weapon'' was not prejudicial to defendant
but advantageous because it put a greater burden on the
prosecution.

 ██ The second part of the objection to the in-
struction on manslaughter has been so thoroughly settled
adversely to the contention of appellant that we do not
consider it necessary to cite the opinions. Attorneys for
defendant recognize the rule set out in Calicoat v. State,

131 Miss. 169, 95 So. 318 (1923). This rule is settled in this State. It may be of interest for the writer of this opinion to point out that he too, made an unsuccessful attempt to have this Court change the rule in the Calicoat case thirty-three years ago in the case of Triplett v. State, *supra*.

After the attorneys had finished the argument, and after all instructions had been read to the jury by the attorneys, the circuit judge said: "Gentlemen of the jury, because there are a great number of instructions in this case, and because there are numerous possible verdicts that you can return under the law, the Court wants to read to you instruction number one of the state and instruction number two for the state and instruction number twenty for the defendant and call your special attention to these three instructions." After these instructions had been read by the court, he said: "Now Gentlemen the Clerk is going to hand you the instructions on the law in this case, the exhibits, and a piece of plain paper and a pencil. You will retire to the jury room to consider your verdict * * *." The defendant assigns this action of the court as reversible error and contends that the court orally instructed the jury in violation of Mississippi Code Annotated section 1530 (1942). The pertinent part of this section is in the following words: "The judge in any cause, civil or criminal, shall not sum up or comment on the testimony, or charge the jury as to the weight of evidence; but at the request of either party he shall instruct the jury upon the principles of law applicable to the case. All instructions asked by either party must be in writing, and all alterations or modifications of instructions given by the court or refused shall be in writing, and those given may be taken out by the jury on its retirement. The clerk, before they are read or given to the jury, shall mark all instructions asked by either party, or given by the court, as being 'given' or 'refused', as

the case may be, and all instructions so marked shall be a part of the record, on appeal, without a bill of exceptions.'' It will be noted that this section says ''the judge in any cause * * at the request of either party * * * instruct the jury upon the principles of law applicable to the case.'' This section also says ''The Clerk, before they are *read* or given to the jury, shall mark all instructions * * *.'' (Emphasis supplied.)

 ██ We are of the opinion that defendant was not prejudiced in this case because the judge, who was required to give the instruction, read only the instructions setting out the form of verdict. We do not condone the action of the court in calling the attention of the jury especially to any instruction, and we are of the opinion that it is much better form for the court to permit attorneys in the case to read the written instructions given by the judge to the jury and permit it to take them out when it retires for the consideration of the verdict. In the present case, however, we do not believe that this case should be reversed simply because the judge read instructions he is required to give to the jury, particularly where they were on the form of the verdict and not on a particular point of law.

Finally, it is contended by appellant that the verdict of the jury was against the overwhelming weight of the evidence.

 ██ We are of the opinion that the evidence in this case amply justifies the verdict, and the judgment should be and is affirmed.

Affirmed.

*Kyle, P. J., and Ethridge, Gillespie and Patterson, JJ.,* concur.