ETHRIDGE, Chief Justice.
Frank Robinson, appellant, was convicted in the Circuit Court of Wayne County of the murder of his stepson, Simeon A. (Simmie) Lloyd, and was sentenced to a life term in the state penitentiary.
The verdict of the jury was amply supported by the evidence. Lloyd, 26 years of age, lived in a rural community of Wayne County with his stepfather, Robinson, and his mother. Robinson is a white male, 54 years of age, who for most of his life has worked as a carpenter’s helper and on odd jobs, such as cleaning water wells. On a Sunday morning, June 30, 1968, Sheriff Marvin Farrior received a call that someone had been shot at the Robinson house. Defendant was standing in the driveway, drunk, when Farrior arrived. Flagging the sheriff down, he got in the car and told Farrior that he had shot Simmie and that Simmie was dead. The sheriff found Lloyd, clad only in underwear shorts, lying on a bed, with his right arm under a pillow. He had been shot in the head with a twenty-gauge shotgun. Farrior found the shotgun under the living room portion of the house.
Defendant contended that he shot Lloyd by accident, while in the process of defending himself against Lloyd, who had two knives in his hand and had threatened to cut his head off. Testimony by several of defendant’s witnesses, including his wife and two sons, shows that, during the three years Lloyd had lived with his parents after his marriage had been dissolved, he had on a number of occasions physically abused and beaten defendant with his fists, and that he was very brutal and hostile to his stepfather.
However, the jury manifestly did not accept Robinson’s version of what happened on the occasion of the shooting. Robinson said that he was in his bedroom, and that Lloyd came to its entrance with a butcher knife and stated that he was going to cut his head off; that he reached up to a gun rack and grabbed a shotgun, and as he came around to shove Lloyd off and to protect himself, the gun accidentally discharged, hitting Lloyd in the head. Robinson said that the impact *375 of the twenty-gauge slug knocked Lloyd off the floor and onto the bed. He thought the gun was unloaded. He did not remember telling the sheriff or Patrolman Thomas that he put a slug in the shotgun before pointing it at Lloyd.
On the other hand, Patrolman Snyder stated that, after reading the Miranda warnings to Robinson, he asked him why he shot Lloyd with a slug, to which Robinson replied, “because I meant to kill him.” Snyder further testified that Robinson had said that his wife would not be angry, “ ‘cause she told me to kill him”; and that he was tired of being beaten up.
Patrolman Thomas went to the funeral home to examine the body and found upon the «sheet on which the body was placed a metal object which he said was a slug. Thomas subsequently interrogated Robinson and testified that, after he had advised Robinson of his Miranda rights, Robinson told him that, when Lloyd had gone to the kitchen to get a knife, he got his shotgun and loaded it with a slug, and that Lloyd was standing just inside of his own room when he shot him.
The bed on which Lloyd’s body was found was in a corner, surrounded at its head and right side by walls of the room, and for about two feet at the head of its left side by the wall of a closet which projected into the room. Seven photographs introduced in evidence showed Lloyd lying partly on his back and partly on his right side at the head of the bed, with his right arm under a pillow. His left arm crossed over his chest, and two knives lay on the bed under his partially clinched left hand. These pictures show a number of blood spots on the wall at the head of the bed, on the wall to the right of the bed, and on the wall of the closet. There was no blood on the floor of the room, but there was a small amount on the ceiling above the bed. The bullet entered Lloyd’s head about four inches above the right eye and came out in an explosive opening behind the left ear.
The jury was not required under the rule of Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), to accept defendant’s version of the incident, because of ample, contradictory circumstantial and direct evidence. The jury could conclude that Robinson was not telling the truth when he testified that Lloyd was shot while standing near the door to his room and was hurled from three to five feet onto the bed. There was no blood on the floor, but blood was splattered on the three walls surrounding the head of the bed. The location of the door to the room in relationship to the projecting closet wall partially surrounding the head of the bed made it impossible for blood to have been splattered on the closet wall, as it was, from a source near the door.
Significantly, Lloyd’s right arm was under a pillow, which would be unlikely if defendant had shot Lloyd while he was standing in the door. A bullet slug was found in the sheet. Moreover, the jury was justified in concluding from the photographs that Lloyd was in bed when he was shot. Defendant told Patrolman Snyder that he intended to kill Lloyd and that his wife had told him to do so. Although the defendant was the only surviving eye witness, all of this and other evidence contradicts defendant’s version of the shooting. The precise position of Lloyd’s head at the time Robinson shot him was an issue for the jury to determine.
There was no error in the trial court’s denial of defendant’s requested continuance. The motion for continuance did not identify the missing witnesses, the steps taken to secure their attendance, any due diligence in attempting to procure their presence, or the nature of their testimony. Defendant failed to comply with the requirements of the statute and the decisions. Miss.Code 1942 Ann. § 1520 (1956); King v. State, 251 Miss. 161, 168 So.2d 637 (1964).
The confessions made by Robinson to Farrior, Snyder and Thomas were *376 properly admitted into evidence. The statement made by Robinson to the sheriff at the driveway was spontaneous and wholly voluntary. Nevels v. State, 216 So.2d 529 (Miss.1968). Patrolmen Snyder and Thomas gave defendant the four-fold warning required by Miranda before interrogating him. Of course, this included statements that he did not have to say anything and whatever he said could be used against him in court. These comprehend and include the right of a suspect to terminate his questioning at any time he wishes.
The seven photographs introduced in evidence had legitimate evidentiary purposes. Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953). Defendant was granted ample instructions setting forth his pleas of self-defense and accident, and the three refused instructions were merely cumulative, even if correctly drawn.
Affirmed.
JONES, PATTERSON, SMITH and ROBINSON, JJ., concur.