394 So.2d 1367 (1981)
Paul T. SMITH, Jr.
v.
STATE of Mississippi.
No. 52548.
Supreme Court of Mississippi.
March 11, 1981.
Rehearing Denied April 1, 1981.
*1368 Michael Adelman, Andalman, Adelman & Steiner, Hattiesburg, for appellant.
Bill Allain, Atty. Gen. by Mark A. Chinn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
BROOM, Justice, for the Court:
Murder is the offense for which defendant Paul T. Smith, Jr. was convicted in the Circuit Court of Leake County and sentenced to life imprisonment. The five issues raised relate to: "Miranda warnings," the "Weathersby Rule," manslaughter jury instructions, and prosecutors' jury arguments. We affirm.
On December 12, 1979, at approximately 9 or 9:30 p.m. the defendant arrived at the home of his ex-wife, Margaret Ann Smith (Margaret herein), at Walnut Grove in Leake County. In the house were Paul Renaud Smith, Margaret, and Joe Nathan Longmire. Apparently, he came to visit Paul Renaud Smith (his and Margaret's son) and was armed with a pistol. Margaret testified that the defendant said something like, "All of you son of bitches just get up and leave or I'll kill you." Following the threat, Longmire, whom the defendant slew the next night, left. The defendant remained overnight with Margaret, drove her to work the next day, and spent that day with their small son, whom he left at the grandparents' house during the afternoon. Shortly after midnight the defendant returned again to Margaret's house, and an altercation erupted between the defendant and Longmire. Just how the killing occurred is in dispute, but basically the defendant's theory is that Longmire attacked him. He says that during a struggle he pulled his gun out of his pocket and shot Longmire to death. In contradistinction, he advances the theory in another portion of his testimony that the shooting was accidental. After shooting Longmire, the defendant took him to the hospital where it was determined that he died of a gunshot wound to the head. A city policeman came to the hospital and asked the defendant what had happened; the defendant told him that a man was shot. Shortly thereafter, Deputy Sheriff Bobby Brown arrived, read Smith his Miranda rights, and questioned him. According to the officers, the defendant gave an oral and written statement the morning of the shooting which was inculpatory and contradictory of the defendant's testimony at trial that Longmire tore his shirt and struggled with him for a few minutes before he shot Longmire in self-defense. Other facts will be given as appropriate herein.
WERE THE WARNINGS GIVEN THE DEFENDANT PRIOR TO HIS MAKING STATEMENTS AGAINST HIS INTEREST ADEQUATE UNDER MIRANDA v. ARIZONA, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)? Before the defendant made the statements against interest, the following warnings were read to him at the Leake County Memorial Hospital:
1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.
5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

(Emphasis supplied).
At the jail, Smith read a printed voluntary statement form advising him of the four warnings required by Miranda. Two additional warnings were included:

*1369 That I can refuse to answer any questions or stop making any statements at any time I choose.
That no law enforcement officer can prompt me what to say in any statement or write it out for me unless I choose for him to do so.
Argument is made that the police officers questioning defendant should have advised him that he could "request that the questioning cease at any time." In making his argument, the defendant places reliance upon Rule 1.03, Mississippi Uniform Criminal Rules of Circuit Court Practice which sets forth six (6) warnings:
Prior to any questioning, a person must be warned that:
(1) He has the right to remain silent;
(2) Any statement he does make may be used as evidence against him;
(3) He has the right to the presence of an attorney;
(4) If he cannot afford an attorney, the court will appoint one for him;
(5) He may request that the questioning cease at any time; and
(6) He may waive any of these rights.
This Court approved the Mississippi Uniform Criminal Rules of Circuit Court Practice by our Order dated August 15, 1979, which Order contains a finding that the Rules "... will assist the Circuit Court Judges of the state in the efficient and expeditious disposition of the business of the circuit courts... ." In Interest of Wilder, 347 So.2d 520 (Miss. 1977) states that "[a]n individual has a right to stop the interrogation at any time he wishes, but it is not required that he must be so informed." The record shows that the defendant was given the four warnings required by Miranda to the effect:
(1) that he has the right to remain silent,
(2) that anything he says can be used against him in a court of law,
(3) that he has the right to the presence of an attorney, and
(4) that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
(384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726).
He was also advised that if he decided at any time to exercise any of his rights, one of which was that he did not have to talk but could remain silent, the interrogation would cease. We stated in Robinson v. State, 228 So.2d 373, 376 (Miss. 1969) that the "four-fold" warning, required by Miranda, "comprehends and includes the right of a suspect to terminate his questioning at any time he wishes."
We think that the warnings given in this case were adequate and there is no indication in the record that the defendant's statements given to the law enforcement officers were not voluntary. Accordingly, we hold that the oral and written statements were properly obtained.
DOES THIS CASE FALL WITHIN THE "WEATHERSBY" RULE, THEREBY ENTITLING THE DEFENDANT TO A DIRECTED VERDICT OR PEREMPTORY INSTRUCTION? Argument of the defendant here is that he was the only eyewitness to the crime and therefore entitled to be acquitted under the Weathersby Rule, which states that if the defendant or his witnesses in a criminal case are the only eyewitnesses, their version, if reasonable, must be accepted unless substantially contradicted by other testimony, physical facts, or common knowledge. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933).
Here it is pertinent that we set forth some of the testimony. The defendant's version which he gave in court was that when he stepped inside his ex-wife's house, Longmire (his victim) attacked him, struck him in the face, and reached back behind him as if going for a weapon, at which time the defendant says that he shot Longmire. In several respects, this version given by the defendant is substantially contradicted. The two statements given by him to the law officers made no mention of the struggle between him and Longmire and made no mention that Longmire attacked him, or that he (the defendant) thought Longmire *1370 was reaching for a weapon. Therefore, the Weathersby Rule is not applicable. Sartain v. State, 311 So.2d 343, 345 (Miss. 1975). Additionally, according to the defendant's version, during the struggle his shirt was "ripped apart" and the struggle left marks about his body. Again this version is contradicted by the investigative officers who testified that the defendant's clothes were not torn and that they found no marks, bruises, or scratches on his body. Petty v. State, 332 So.2d 413, 414 (Miss. 1976). There are other contradictions, substantial in nature, as to the defendant's version of the episode, and clearly this is not a case for application of the Weathersby Rule.
DID THE LOWER COURT ERR IN FAILING TO LIMIT THE JURY ISSUE TO MANSLAUGHTER? Our answer has to be negative because the testimony raised a classic issue of murder to be resolved by the jury upon conflicting evidence. The defendant's version was that his victim without any reason whatever just attacked him upon his arrival at the house making it necessary that he slay his attacker, Longmire. To the contrary is the testimony of Margaret that on the evening of December 12, 1979, the defendant came to the house where he found her, her son, and Longmire (apparently Longmire was having some sort of an affair with her). The ex-wife Margaret stated that the defendant exhibited a pistol and threatened to kill all of them after which Longmire left the place. According to her the defendant returned the following night after midnight and began beating on the windows of the room where she and Longmire were sleeping. She testified that the defendant kept yelling that he would break the door down if they did not let him in and that this prompted Longmire to go to the door where he told the defendant that he could not come in; then she heard a shot. On this testimony, the issue of murder was properly submitted to the jury. Interestingly enough, at the defendant's request the jury received instructions on manslaughter.
DID THE LOWER COURT COMMIT ERROR BY REFUSING TO GRANT THE DEFENDANT HIS REQUESTED INSTRUCTION D-10? The instruction was clearly improper because it contained language that the state had the burden of proving the charge not only beyond a reasonable doubt but
to the exclusion of every other reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence... .
There is no merit to this argument because the state's case was not based entirely on circumstantial evidence but partly upon his confessions. Additionally, the instruction could have been properly refused because it contained confusing language. Accordingly, there is no merit to this part of the argument.
DID THE REMARKS OF THE PROSECUTORS IN CLOSING ARGUMENT CONSTITUTE REVERSIBLE ERROR? In his closing argument, one of the prosecutors stated to the jury that the "Defendant has asked for some manslaughter instructions." Objection was made to the prosecutor's statement, and the lower court sustained it, after which the prosecutor stated to the jury, "They seem to want manslaughter." Then the defense objected and moved for a mistrial which objection and motion were overruled. The prosecutor's statement that the defendant asked for "some manslaughter instructions" has similarities to that which we condemned in Forrest v. State, 335 So.2d 900 (Miss. 1976). In Forrest, we ordered reversal but in the instant case it is to be noted that the evidence is not close or not nearly so close as it was in Forrest. Another feature of Forrest which makes it different from the present case is that in Forrest there are three separate episodes in which the prosecutor asked questions inferring that the defendant had committed other offenses. One of these indiscretions was committed by the prosecutor after the trial court had sustained an objection. Reversal was ordered in Forrest because of several errors, none of which when considered separately would have been reversible error.
*1371 Part of the argument of the defense is directed at the prosecutor's statement to the jury that "This is the strongest case of murder I have seen since I've been in office." Our view as to this portion of the prosecutor's jury argument is that what he said was within the bounds of legitimate argument. Peyton v. State, 286 So.2d 817, 819 (Miss. 1973).
We do not find any merit to the argument made that reversible error occurred on account of what was said in the prosecutors' closing arguments. Upon the totality of the evidence before the jury, the verdict was more than adequately supported by the evidence, and it would be difficult to see how any fair-minded jury could have arrived at any verdict other than that of guilty. Obviously at the time of the killing, the defendant had armed himself with a pistol and gone to his ex-wife's residence shortly after midnight. There Longmire answered his knock and was killed. The defendant's version of the incident that his clothes were torn and that he had marks on him was completely contradicted by the testimony of the investigating officers. Neither of his confessions contained his version given at trial that in a struggle between him and Longmire, he shot Longmire in self-defense. The trial record and excellent briefs make it clear that the defendant was ably and vigorously defended. Evidence of the defendant's guilt was overwhelming and although he did not receive a perfect trial, he was fairly tried, and no reversible error is to be found.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and HAWKINS, JJ., concur.