FAIR, J.,
for the Court:
¶ 1. Belinda Boleyn shot and killed her husband, Michael Boleyn, in April 2005. She was convicted of manslaughter and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years to serve. Belinda now appeals her conviction asserting three errors by the trial court. Finding no error, we affirm.
FACTS
¶ 2. In 2001 Belinda was married to Joseph Beard. They had two sons. Belinda and Joseph began working with a prison outreach group and became involved with efforts to secure the release of Joseph’s old friend, Michael. Michael claimed to have found God and to be a changed man. He and Belinda became close. Ultimately, she divorced Joseph and married Michael in November 2002. Michael was released from prison in 2003.
¶ 3. After they were married, Belinda discovered many things about Michael. She claims he was suspected in murders, including his ex-wife’s murder, and was involved with the Dixie Mafia. She began to fear for her safety. Due to her recent liver failure, she was very ill at this time. Belinda stated that Michael did not work, destroyed her financial life, and dropped the family’s health insurance. He was very controlling and would not allow her to go out alone, talk on the phone, or have visitors. He would threaten Belinda, but there was no history of domestic violence between them. Michael kept knives, machetes, and a shotgun in the house.
¶ 4. Belinda believed Michael planned to kill her and advised Louisiana Assistant District Attorney Don Landry, Investigator Carl Monk of the Federal Bureau of Investigation, and her family of her fears. Her mother gave her a revolver for protection. Belinda asserts that Michael was getting quotes on life insurance for her.
¶ 5. On April 9, 2005, the couple got into an argument. Belinda stated that Michael flew into a rage and was threatening her, so she retrieved the revolver and put it in her pocket. The fight continued, and he grabbed her by the throat. He then said, “I’ve got something for you” and reached behind the garbage can. Belinda believed he was reaching for his shotgun, and she fired. This did not stop him from advancing on her, so she shot twice more. Michael dove onto her and began hitting her. He stood once more before falling down and died before help could arrive.
¶ 6. Belinda called the police. When the officers arrived, she explained that she had been beaten, but the officers did not see any bruising. They could not find the shotgun and discovered that Michael had removed it from the house the day before. *1180 Belinda was taken to the police station where she gave a statement in the presence of her attorney. A video recording of that statement was later introduced into evidence and played for the jury.
¶ 7. After a two-day jury trial, Belinda was convicted of manslaughter. She now appeals her conviction asserting: (1) the trial judge erred in failing to grant her motion for judgement notwithstanding the verdict (JNOV) or a new trial under the Weathersby rule; (2) the State improperly shifted the burden of proof by arguing that Belinda failed to prove self-defense; and (8) her defense attorney failed to provide constitutionally effective assistance of counsel at trial.
DISCUSSION
1. Weathersby Rule
¶ 8. The Weathersby rule states: [Wjhere the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.
Weathersby v. State, 165 Miss. 207, 147 So. 481, 482 (1933).
¶ 9. In Johnson v. State, 987 So.2d 420, 425 (¶ 11) (Miss.2008), the Mississippi Supreme Court stated that Weathersby is inapplicable where the defendant’s version of events is unreasonable or contradicted by physical evidence. In either situation, guilt remains an issue for the jury to determine. Jones v. State, 39 So.3d 860, 864 (¶ 22) (Miss.2010).
¶ 10. Here, the physical evidence contradicts the defendant’s version of events. Belinda stated that her husband grabbed her around the neck and squeezed as hard as he could. He shoved her around and tackled her while striking her about the head. In contrast, photographs taken by officers a few hours after the shooting reveal no bruising, scratches, or cuts on Belinda’s neck, arms, or face.
¶ 11. Further, though Belinda claimed she was “scared to death” during the incident, she followed her husband through the house and perpetuated their argument for fifteen to twenty minutes. This argument began outside the house and continued inside as they moved from the common areas into their bedroom and ultimately into the kitchen where it ended violently.
¶ 12. In Smith v. State, 394 So.2d 1367 (Miss.1981), the defendant claimed his victim attacked him before the shooting. The supreme court noted that this version of events was contradicted by other evidence, such as the officers’ testimony that Smith’s clothes were not torn and that they found no bruises, marks, or scratches on his body. Id. at 1369-70. The Weathersby rule was not applicable to these facts. Id. at 1370. Similarly, in Petty v. State, 332 So.2d 413, 414 (Miss.1976), the supreme court found physical evidence that contradicted Petty’s account of a fight, specifically the absence of cuts, bruises, scratches, or other evidence of a fight on her person. Thus, the Weathersby rule did not operate to acquit the accused. Id.
¶ 13. Because the physical evidence conflicts with Belinda’s statement to police, this case was properly found to fall outside of the Weathersby rule. Her guilt was for the jury to decide. We find no error in the trial judge’s refusal to grant a directed verdict.
¶ 14. Belinda also contends that the trial court erred by denying her motion for a JNOV. When considering the denial of a JNOV, we examine the evi *1181 dence in the light most favorable to the State to determine if any reasonable jury could have convicted the defendant beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005); Jackson v. State, 73 So.3d 1176, 1182 (¶ 25) (Miss.App.Ct.2011).
¶ 15. Manslaughter is “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]” Miss.Code Ann. § 97-3-35 (Rev.2006). The jury was instructed on self-defense: “[T]o make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do her some great bodily harm ... [, and] she must have reasonable grounds to believe that there is imminent danger of such act being accomplished.”
¶ 16. Examining the evidence in the light most favorable to the State, we cannot say it was error for the jury to reject the defendant’s theory of self-defense. The reasonableness of Belinda’s action was a factual determination for the jury. Even if the jury believed her version of events, it could have reasonably determined that she was not in imminent danger of serious bodily injury. Belinda’s statement satisfied the elements of manslaughter. She shot and killed her husband during a physical confrontation. As the jury did not believe she acted in self-defense, it was well within the jury’s province to consider her action manslaughter.
2. Closing Argument
¶ 17. Belinda contends that the State improperly argued, in its closing remarks, that she had not proven self-defense. She asserts that this impermissibly shifted the burden of proof, as it is the State’s burden to prove that the defendant acted “not in necessary self-defense.” Miss.Code Ann. § 97-3-35.
¶ 18. Because there was no contemporaneous objection to this argument at trial, the issue is waived on appeal.
Matters such as this must be presented first to the trial court in the form of an objection, to be followed by a mistrial motion if the objection is sustained. This gives the trial court the first opportunity to consider whether ... something short of granting a mistrial may serve to remove or at least lessen the impact so that the trial may continue.
Radcliff v. State, 736 So.2d 1081, 1083 (¶ 4) (Miss.Ct.App.1999). The jury was properly instructed by the trial court. Further, the record reveals that the State argued self-defense was not supported by the evidence presented. This was a proper comment on the evidence in closing argument.
3. Ineffective Assistance of Counsel
¶ 19. To prove ineffective assistance of counsel, a defendant must show that counsel’s performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A strong presumption exists that counsel’s performance falls within the range of reasonable professional assistance. Id. at 689, 104 S.Ct. 2052. Overcoming that presumption requires showing a reasonable probability that but for counsel’s errors, the results of the trial would have been different. Id. at 694, 104 S.Ct. 2052.
¶ 20. The merits of an ineffective-assistance-of-counsel claim on direct appeal should be addressed only when “(1) the record affirmatively show[s] ineffec *1182 tiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). Review on direct appeal is “confined strictly to the record.” Id. at 1102 (¶ 6).
¶ 21. Belinda makes much of the fact that certain witnesses were not called to testify, that certain questions were not asked at voir dire, and that certain documents were not entered into evidence. But counsel’s choice of whether or not to call witnesses or ask certain questions falls within the ambit of trial strategy and will not support an ineffective-assistance-of-counsel claim. Jackson v. State, 73 So.3d 1176, 1181-82 (¶ 22) (Miss.Ct.App.2011) (quoting Hancock v. State, 964 So.2d 1167, 1175 (¶ 18) (Miss.Ct.App.2007)); see also Ross v. State, 16 So.3d 47, 58 (¶ 26) (Miss.Ct.App.2009). Further, the documents Belinda references are not part of the trial record, so this court cannot review them. “We find no obvious deficiencies that imposed a duty upon the [trial] court to declare a mistrial.” Jackson, 73 So.3d at 1182 (¶ 23). As these issues are not fully developed in the record, we deny relief on this issue without prejudice.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF MANSLAUGHTER, AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE, AND TO COMPLETE A COMMUNITY SERVICE PROGRAM IF RELEASED BEFORE THE FULL SENTENCE IS SERVED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.