KITCHENS, Justice,
specially concurring:
¶ 28. I fully concur with the reasoning and result of the majority’s opinion. I *1083 write separately only to discuss the adequacy of the varied Miranda warnings employed across this state. More than fifty-seven years ago, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), announced basic warnings that must be given before custodial interrogation is undertaken by police, and its consequences and nuances still are being debated today. While the Supreme Court has established a floor — a minimum standard — for sufficient warnings regarding an accused’s Fifth Amendment rights, beneath which the State may not descend, nothing prohibits the states’ strengthening and even elevating the obligations of their law enforcement officers in ensuring that those whom they question have clearly and unequivocally been informed concerning the vested constitutional rights they enjoy before and during police questioning, and the consequences of foregoing them.
¶ 29. The majority correctly holds that the warning given to Brown met the minimum procedural safeguards required by the United States Constitution as outlined in the Miranda decision. Brown was told that he had the right to remain silent, that if he waived that right his statement could be used against him, that he had the right to an attorney, and that he would be provided an appointed attorney if he could not afford one. This encompasses the “ ‘fourfold’ warning, required by Miranda. ...” Smith v. State, 394 So.2d 1367, 1369 (Miss.1981). Brown argues, in essence, that there should be a fifth: the State should have informed him that he had the right to a cessation of questioning at any time. While this unarguably is a component of Brown’s right to silence, because the Forrest County Miranda waiver form advised Brown of his rights to the absolute constitutional minimum, I cannot say that his statement was obtained in violation of the Fifth Amendment.
¶ 30. But, why not return one tried- and-true sentence to the waiver form to make it crystal clear to suspects in custody whom the police wish to question that, once the accused has begun to speak, he still may exercise his right to silence or to the assistance of an attorney at any time? The majority correctly states that the Miranda warning “comprehends and includes the right of a suspect to terminate his questioning at any time he wishes.” Smith, 394 So.2d at 1369 (quotation omitted). The Supreme Court said that its goal in promulgating the warnings was “to assure that the individual’s right to choose between silence and speech remains unfettered throughout the interrogation process.” Miranda, 384 U.S. at 469, 86 S.Ct. 1602. “Miranda in flat and unambiguous terms requires that questioning ‘cease’ when a suspect exercises the right to remain silent.” Michigan v. Mosley, 423 U.S. 96, 115, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (Brennan, J. dissenting). Undeniably, the right to silence would mean little if it evaporated upon the earliest utterance of a statement, or if an attorney could no longer be obtained once an accused had begun speaking with police. To safeguard these Fifth Amendment rights,[1] individuals *1084 necessarily must understand that they have the right to demand at any time that questioning cease.
¶ 31. We jurists have the benefit of legal educations and the luxury of comfortable courthouse reposes from which to deduce the foregoing conclusion. However, many accused persons of multitudinous backgrounds, intellects, and educations, in the context of custodial interrogations with their inherent stresses and strains, are not as well equipped to make that logical leap with no more information than that contained in the four-fold, minimal warning mandated by Miranda. It would be much simpler and clearer if, before any questioning, every accused in this state were given the standard four-fold warning, and also informed, in one more sentence, that he or she had the right to terminate the questioning at any time.
¶ 32. This Court clearly recognized the wisdom of such a procedure in 1979 when it adopted the Mississippi Uniform Criminal Rules of Circuit Court Practice. One of those rules outlined this Court’s preferred Miranda warning.[2] Rule 1.03 of the former Mississippi Uniform Criminal Rules of Circuit Court Practice provided:
Prior to any questioning, a person must be warned that:
(1) He has the right to remain silent;
(2) Any statement he does make may be used as evidence against him;
(3) He has the right to the presence of an attorney;
(4) If he cannot afford an attorney, the court will appoint one for him;
(5) He may request that the questioning cease at any time; and
(6) He may waive any of these rights.
(Emphasis added.)
¶ 33. The 1979 criminal rules were adopted because they would “assist the Circuit Court Judges of the state in the efficient and expeditious disposition of the business of the circuit courts.” Smith, 394 So.2d at 1369. Our circuit courts frequently are called upon to decide the adequacy of an accused’s Miranda waiver, and the warnings given, if any, may vary widely from case to case and from place to place within our state. At present, depending upon where the questioning occurs, the accused may or may not be told that he or she has the right to end the questioning at any time. This right is implicit in the Supreme Court’s holding in Miranda, and in certain counties and cities, one simple sentence makes that clear. Yet, in other jurisdictions in our state, where only the “four-fold” warning is given, the accused must discern on his own his right to stop the questioning at any time. A statewide unified form which recites the four-fold Miranda requirements while also informing the accused of the inherent right to terminate the questioning at any time would, in my view, drastically reduce the amount of time that Mississippi’s Bench and Bar spend arguing about and striving to determine whether a Mi *1085 randa warning was constitutionally sufficient.
¶ 34. Clearly, the best practice is to inform an accused of all of his applicable rights, including his ability to invoke them at any time throughout the interrogation process. While the rights protected by the decision in Miranda must be available to an accused at all times during questioning, a clear one-sentence instruction to that effect in a waiver form eliminates the necessity for the accused to extrapolate this implicit truth from his or her own reading of the four-fold Miranda requirements. In this case, Brown’s waiver scraped the constitutional floor established by Miranda in safeguarding his rights. However, I question whether the floor is where those invaluable rights ought to be.
DICKINSON, P.J., AND KING, J., . JOIN THIS OPINION.

. My reference is to the rights to silence and assistance of counsel that attach during a custodial interrogation and are protected by the Fifth Amendment right against self-incrimination. These rights are present before and during a custodial interrogation, but before adversarial proceedings have been instituted against the accused. The right to counsel is protected under the Sixth Amendment once adversarial proceedings have begun against an accused, and its protections can begin as soon as an accused is arrested pursuant to a warrant. See Nicholson v. State, 523 So.2d 68, 74 (Miss.1988) ("If ... [the defendant] was arrested pursuant to warrant at the time of the voice lineup, his right to counsel had attached.”); see also Kirby v. Illinois, 406 U.S. 682, 688-89, 92 S.Ct. 1877, 32 L.Ed.2d *1084 411 (1972) (holding that the Sixth Amendment right to counsel attaches when judicial proceedings have been instituted against the accused, which is the point at which "the government has committed itself to prosecute....”). The Fifth Amendment protects an individual from incriminating himself, while the protections of the Sixth Amendment work to ensure that the proceedings and trial against an individual are fair.

. These rules were replaced in 1995 by the Uniform Rules of Circuit and County Court Practice. There is no corollary to Rule 1.03 in our current rules; the Uniform Rules of Circuit and County Court Practice govern court proceedings but do not address criminal investigations.